**HANOVER FIRE INS. CO. v. SOUTHERN AMUSEMENT CO., Inc.**

No. 1182.

Court of Appeal of Louisiana.    First Circuit.

Oct. 5, 1933.

Robt. R. Stone, of Lake Charles, for appellant.

J. Sheldon Toomer, of Lake Charles, for appellee.

MOUTON, Judge.

The district judge rendered the following opinion and judgment in this case:

"This is a suit by the fire insurance company and its state and local agents, for premiums under a fire and tornado insurance contract. A policy covering these hazards, and affecting the building of the Amusement Company then under construction at Lafayette, Louisiana, was issued on April 6, 1931. It carried insurance against loss by fire in the sum of $60,000.00, and against loss by tornado in the same sum. Subsequently the Amusement Company requested reduction of the tornado insurance to $40,000.00, and the original policy was cancelled, and another substituted in its place. As to the $20,000.00 reduction, the cancellation was at 'short rate.' There is no contention on this point, since it is agreed that the contract provides that cancellations made at the request of the insured shall always be effected under the 'short rate.' Upon surrender of the original policy, its substitute, under instructions of Mr. Wachsen, was forwarded by the local agent to the Interstate Trust and Banking Company at New Orleans, for whom a mortgage payable clause was attached to the policy.

"Some contention is made that the Amusement Company never accepted this policy, and that therefore, there is no contract. The contention is not well founded. The second policy corresponds in every stipulation, except as to amount, with the first policy, which had been accepted, and for which it was substituted. It was delivered to the person designated by the insured, and named as mortgagee with an interest in the contract. The policy as written, therefore expressed the contract between the parties.

"The form of the contract is an ordinary or standard fire and tornado insurance policy, for the term of one year, with this rider attached:

" 'It is understood that the above described building is now in the course of construction, and this policy is extended to cover lumber, brick and all building material on the premises and adjacent thereto.'

"Necessarily, under this clause, the builders' risk rate applied; but upon completion of the building, a new rate was applicable. This new rate could not be applied until the rate fixing board had acted; and this was not done until four or five weeks after completion of the building. Subsequent contentions and negotiations resulted in the present litigation.

"Mr. Dolby's version of the controversy is as follows:

"When the building was completed, Mr. Wachsen asked for the new rate. Later, when the rate was promulgated, he declared that it was too high, and refused to pay it. He was told he could cancel at the short rate, but refused to do so, and demanded cancellation at the pro rata rate. Pro rata is based on the used fraction of the policy term, while short rate is based on a schedule fixed by the Louisiana Rating Bureau, and is higher than the pro rata rate. Mr. Wachsen never demanded cancellation until after he was informed of the new rate, some time after the completion of the building. He was told a number of times that he could cancel at short rate, and refused. The policy used in this case automatically covered the risk after completion of the building, but at a rate to be fixed by the authorities. After the new rate was promulgated, the witness delayed endorsing it on the policy, and was criticized by his company for the delay. His object was to permit the Amusement Company to cancel at short rate based on the original builders' risk; but this having been refused, he was compelled to endorse the new rate, after which it would necessarily form the basis for any cancellation. The dispute between the parties arose after the promulgation of the new rate. It was only then that the defendant demanded cancellation, but refused a short rate cancellation. The witness could not know in advance what the new rate would be; but when it was promulgated, it dated back to the completion of the building. The defendant was protected, therefore, but at an unknown rate of premium, to be applied when declared by the state authorities.

"Mr. Wachsen's version of the controversy is as follows:

"He instructed the agent to write builders' risk insurance. The policy was not exactly as ordered, but accepted. He never saw the second policy, and presumed the change had been made in the original by the mere addition of a rider. When the building was completed, he told Mr. Dolby, and asked for cancellation. Dolby said it would go through at the same rate, and he consented to let it stand. The building was completed on July 9. His first information of the increased rate was on August 15, when he received the rider in a letter from the agent. Meanwhile, however, he had made certain alterations in fire protection, at the suggestion of Mr. Ma-

lone, general agent, who said it would affect the rate. Upon learning the new rate, he demanded cancellation on a pro rata basis, and Dolby refused any cancellation except at short rate, based on the new rate. He insists that Dolby had told him that the policy would continue for the full term at the original rate.

"Since insurance rates are fixed by law (Act No. 189 of 1904, and Act No. 302 of 1926) it seems improbable that a reputable insurance agent would have agreed that builders' risk rate should apply on a completed building; and Mr. Wachsen must be mistaken on this point. And since the legal rate on a new building could not be known until it was promulgated by the authorities, it was impossible that the agent could quote the rate before the promulgation. The remaining testimony of Mr. Wachsen is to the effect that he never consented to a cancellation on a short rate, on either base rate. If under the circumstances proven, therefore, he was entitled by the terms of the insurance contract, only to a short rate cancellation on either base rate, he remains bound by the terms of the contract. The contract provides that if cancelled at the request of the insured, after payment of the premium, the company shall retain the short rate premium. Although the premium is shown in this case not to have been paid, the quoted provision necessarily applies; for in any such adjustment, payment of the premium due would of course be deducted before cancellation; and the provision therefore applies literally in this case. Mr. Dolby, as well as the other witnesses, engaged in the insurance business, testify that they invariably effect cancellations on the short rate basis, except where the insurer and not the insured requests the cancellation, and in rare cases in which the financial responsibility of the insured is involved. It is true that another exception to the rule occurs when the rate had been raised by the insurer during the term of the policy; but that is in fact not different from the cases in which the insurer demands cancellation. It is tantamount to saying to the insured: 'We do not care to be bound longer by our contract, but if you will pay us a greater consideration, we will remain bound by it.' The insured may then say one of two things: either that he consents to the new contract, or that he consents that the insured cancel the policy. The cancellation would then be, necessarily, on a pro rata basis. But this situation arises when the insurer wishes to retract from his contract, or to modify its terms into a new contract. It does not arise when he insists upon the compliance with the contract. The present case does not involve an increase of rate on a hazard, it involves the rates on two hazards; and the contract can be construed in no manner other than as providing for such a situation. The term is for one year; the form is standard, with builders' risk rider attached; the building operation could not have been expected to occupy the full term; the policy protected the building after completion; the legal rate before completion was known and applied; the legal rate after completion could not be known in advance, but was applied as soon as known. The contract, therefore, provided for the two hazards and the two rates.

"Moreover, if Mr. Wachsen is mistaken, as he must be, in saying that Mr. Dolby told him the rate would continue the same after the completion of the building, he consented to the continuance of the contract for more than a month thereafter; and having received the benefits of its protection during that time, he owes the legal compensation therefor.

"The conclusion must be that the terms of the contract bind the defendants to the payment of the premium legally fixed and applied to the risk. Judgment must be rendered accordingly, subject to the right of the defendants to cancel their policies at short rate, and to take credit for any premiums remaining unearned at the date of cancellation."

All the material issues in this case, which are mostly of fact, are clearly stated, and correctly disposed of in the opinion above reproduced.

The only contention that presents a question of law in the case upon which counsel for defendant company is insisting on appeal is as to whether there was a meeting of minds on the higher rate of insurance which was provided for in the second policy.

When the contract of insurance was entered into originally, and when the second policy was issued, Mr. Colby represented plaintiff company, and Mr. Wachsen, defendant company. The policy was delivered to Mr. Wachsen, and a rider showing the increased rate was sent to the assured, the Southern Amusement Company, Inc., and also to the Interstate Trust & Banking Company in favor of which a mortgage payable clause was attached to the policy.

Mr. Dolby was asked if Mr. Wachsen had said to him that he expected to pay the increased rate which had been written in the second policy out of any particular funds or money he was to get.

He answered that question by saying, in substance, that Mr. Wachsen had said that the Interstate Bank & Trust Company, the holder of the mortgage, had $25,000 which he thought would, on receipt of some papers, release that money out of which the increased premium would be paid.

Mr. Wachsen, who testified in the case, does not deny that he made that statement. The proof is also that, though he refused to pay the increased rate, on a short rate basis, that he never returned the policy, although so requested, or made an effort in that direction.

Counsel for defendant quotes the following from 26 C. J. p. 52: "In general, it is essential as in the case of other written contracts that the policy be accepted by the insured—in order to complete the contract. The retention of a policy without a rejection constitutes an acceptance. Where insured has simply received and retained possession of the policy in order to determine subsequently whether he will accept or reject it, is not a binding contract."

There was no rejection of the policy in the instant case, and there is no proof whatsoever to indicate that it was being retained to subsequently determine whether defendant company would accept or reject it; hence the foregoing quotation relied upon by counsel has no application.

In line with the doctrine stated in the quotation to which we have referred, counsel cites the following from 26 C. J. p. 59, par. 51, quoting: "A policy may be delivered conditionally and a failure of the condition prevents the policy from becoming operative. An unconditional delivery of the policy, followed by the acceptance, completes the contract and binds the parties."

Where a policy has been delivered conditionally, no doubt a failure of the condition will prevent the policy from becoming operative. There was no condition attached to the delivery of the policy in this case to bring it under the principle above stated in the first part of the rule. There was really an unconditional delivery of the policy to the defendant company, with rider, showing the increase of rate after the completion of the Jefferson Theatre at Lafayette, La., the building which had been insured. The policy was retained, and Mr. Wachsen never returned it, although requested so to do by Mr. Colby, at different times.

From the conduct of defendant company, and the failure of its agent, Mr. Wachsen, to return the policy, clearly resulted an implied, if not an express, acceptance of the policy, which completed the contract, binding both companies.

Let us suppose that the Jefferson Theatre Building had been destroyed by fire or tornado while the policy was in the possession of defendant company; of its agent, or of the Interstate Trust & Banking Company, holder of the mortgage. If such had happened, is it possible to believe that the defendant company would have said that it had not accepted the policy, and that plaintiff, insurance company, was free of all obligations under its contract? We do not think that defendant company would have released plaintiff company from indemnity for the property destroyed.

The defendant company was properly held liable by the district judge under the provisions of the second policy.

On the rehearing applied for in the case, the court correctly made a reduction of $108.48 for the reasons stated by the court in its opinion refusing the rehearing. This amount of $108.48 deducted by the court from the sum of $2,145 originally decreed against defendant brought the amount to $2,037.16, and the original judgment was accordingly amended, and final decree was entered on the rehearing for that amount.

On appeal to the Supreme Court, that court held that the defendant company had admitted in its answer that it owed $250 of the amount claimed. This amount of $250 which formed part of the $2,037.16 decreed against defendant on rehearing, not being in contest, leaves the amount in dispute at $1,787, of which this court has jurisdiction.

The case was therefore transferred by the Supreme Court to this court.

Finding no error in the judgment appealed from as amended below on rehearing, it is hereby affirmed, with cost.