McBRIDE, Judge.
This is a suit by an insurance broker for the earned premium on three insurance policies issued by Universal Underwriters covering a fleet of motor vehicles owned and operated by Kildare Truck Line, Inc., which was engaged in the business of common carrier by motor vehicle. The policies covered the insured against automobile liability and material damage for the year beginning May 9, 1954, and ending May 9, 1955. The insured on July 14, 1954, directed the broker to effect cancellation of the policies effective as of July 1, 1954. The policies were can-celled by the insurer on a short rate basis, and whereas the insured had not paid the premium, it charged back to plaintiff, as the agent who secured the policies for Kildare Truck Line, Inc., the amount due for the earned premium, viz., $1,934.32, and plaintiff now seeks to recover said amount from Kildare Truck Line, Inc. (now in liquidation) and its liquidators.
*312 In answer the defendants, among other things, set up that plaintiff in securing the policies for Kildare Truck Line failed to follow instructions, and the policies afforded insufficient coverage, and the assured acted reasonably in requesting cancellation of the policies and that it had cause to do so under the circumstances. Defendants also allege that they should be charged only on a pro-rata basis for the time the insurance remained in effect.
After a lengthy trial in the court below, plaintiff recovered judgment for $1,222.08 which would be the amount due had the policies been cancelled on a prorata basis, the judge evidently being of the opinion that plaintiff, who was the insurance agent, should not be permitted to recover, under the circumstances surrounding the issuance of the policies, the amount which would be due upon cancellation of the policies on the higher short rate basis. The plaintiff has appealed and so have the defendants. Plaintiff makes the contention that the amount of the judgment should have been fixed according to the short rate schedule as set forth in the contracts of insurance, which was the amount the insurer charged to plaintiff and which is the actual amount due by defendants. Defendants do not pretend that the trial judge erred in applying the prorata formula in determining the amount of premiums due, but they insist that the amount of the judgment should be decreased by a credit which is due them representing what would be the premium for certain coverage they allege was not effected due to an exclusion clause which appears in one of the policies.
Each of the three policies of insurance contains provisions to the effect that if the policy be cancelled by the assured, the underwriters shall retain the earned premium thereon for the period that the policies have been in force on the short rate proportion as set out therein.
The statutory law in this state governing cancellations of insurance policies is LSA-R.S. 22:637, which provides in paragraph B that when the cancellation is made by the insured, “Following such cancellation the insurer shall pay to the insured or to the person entitled thereto as shown by the insurer’s records, any unearned portion of any premium paid on the policy as computed on the customary short rate or as otherwise specified in the policy.”
See, also, Fisk v. Rowe, La.App., 91 So.2d 65; Hanover Fire Ins. Co. v. Southern Amusement Co., Inc., La.App., 150 So. 92; and Central Surety & Insurance Corporation v. Canulette Shipbuilding Co., Inc., La.App., 195 So. 114.
Defendants recognize the law of the state to be as above stated, but counsel on their behalf in his brief says: “To the extent that [LSA-] R.S. 22:637~B permits the charging of the short-rate, it is, by its own terms, applicable as between the insurer and the person entitled thereto as shown by the insurer’s records.” This is perfectly true. We are not concerned whether the insurer is entitled to the earned premium for the period that the policies were in force on the short rate proportion; the plaintiff before us is not the insurer which issued the policies but the procuring agent or broker against whom the insurer charged back the earned premium.
Defendants’ real defense as we understand it is that the plaintiff in his role of broker and agent for Kildare Truck Line was negligent and derelict in his duty in the manner of obtaining the policies for said insured and he is accordingly responsible for any damage it sustained, which they seek to measure as the difference between the short rate proportion of the premiums and the amount computed on a prorata basis, which difference, they insist, the broker should be made to absorb. It is argued plaintiff was negligent in several respects, but we need not examine into all of the charges made, it being sufficient to say that the evidence in the case definitely shows that the plaintiff in securing the insurance coverage did not properly represent Kildare Truck Line and *313 secured policies which did not adequately or sufficiently coyer the insured’s requirements.
For the preceding year plaintiff as broker had procured for Kildare Truck Line certain policies with Lumbermens Mutual Casualty Company, and when the expiration date thereof approached, the insured instructed plaintiff to renew the insurance for the then coming year. On May 3, 19S4, plaintiff testified he advised Kildare Truck Line by letter that Lumbermens Mutual Casualty Company was unwilling to renew and that the risk was not acceptable to any other of plaintiff’s mutual carriers of insurance. The letter further stated plaintiff thought the required insurance coverage could be effected with Lloyd’s of London through Universal Underwriters. Defendants deny receipt of said letter. On May 7, 1954, plaintiff addressed another letter to Kildare Truck Line, Inc., stating that he was renewing the vehicle fleet policies effective May 9, 1954, on the same basis as the Lumbermens policies expiring on that date. The letter specifically stated that:
“ * * * Coverage will include, as at present, Bodily Injury Liability with limits of $50,000 each person, $150,000 each accident; Property Damage in amount of $100,000 per accident; Fire, Theft and Combined additional Coverage as per Schedule.”
Plaintiff forwarded to the insured a binder in letter form evidencing such insurance coverage, and for some reason or other which does not clearly appear, the policies themselves were not sent to the insured until after July 15, 1954, a day or so subsequent to the insured’s order for cancellation.
Although on May 7, 1954, plaintiff had advised Kildare Truck Line that he was renewing its vehicle fleet policies on the same basis as the Lumbermens policies, the new policies he secured from Universal Underwriters were not on the same basis and the extent of the insurance protection thereunder was vastly different from and much more limited in scope than the coverage which the prior policies afforded the insured. The premiums on the Universal policies were also much greater.
Under the Lumbermens policies the insured’s vehicles were covered by the insurance within a territory or radius of 150 miles. This was expressed in one of the Lumbermens policies thus:
“If regular or frequent trips of the automobile exceed 150 miles each in length, measured from the point at which the load or any portion thereof is placed on the automobile, to the most distant point of destination to which the automobile is transporting any part of such load or to which the automobile is being operated, the insurance does not apply to any accident which occurs during any such trip, or return therefrom.”
■The other of said policies provided:
“In consideration of the premium at which this policy is issued it is warranted by the Insured that no regular or frequent trips of commercial automobiles described in the policy are or will be made during the policy period to any location beyond a 150 mile radius from the limits of the city or town of principal garaging of such automobiles.”
However, in the initial coverage policy issued by Universal Underwriters there appears a “Description of Use Endorsement” and Warranty No. 1 thereunder reads as follows:
“Subject to the territorial limitations of such policy, the regular or frequent use of the commercial type vehicles described in such policy is and will be confined to the territory within (see Schedule) miles of New Orleans, La.”
Reference being made to this schedule mentioned in Warranty No. 1 discloses that twenty-seven of the vehicles were confined to a 150-mile radius, five were confined to a 50-mile radius, and as far as one truck is concerned, no limitation appears to have been stated.
*314 It is obvious the difference as between the limits of coverage under the Lumbermens policies and under those issued by Universal Underwriters is material, for under the former all of the insured’s vehicles were protected within a 150-mile radius, while according to Warranty No. 1 in the Universal initial policy five vehicles were confined to the territory within 50 miles of New Orleans and insofar as one vehicle was concerned no confinement limit was stated.
Besides what we pointed out with reference to the operating territory within which the vehicles of the insured were covered, there appears to be another striking and most important difference between the Lum-bermens policies and those issued by Universal Underwriters. Warranty No. 2 as it appears under the “Description of Use Endorsement” of the Universal Underwriters initial coverage policy reads as follows:
“The commercial type vehicles described in such policy are not and will not be used primarily for the transportation of explosives or of inflammable liquids or inflammable gases.”
No such warranty or exclusion was contained in or made part of the Lumbermens policies, and also in that respect it clearly appears that the Lumbermens policies and the Universal Underwriters policies were not “on the same basis” as plaintiff represented they would be in his letter of May 7, 1954.
Plaintiff from the witness stand attempted to explain that under the Universal Underwriters contracts the insured in reality had more protection and coverage than under the Lumbermens policies, but frankly we do not comprehend how this could be. The pertinent language contained in the policies, which we thought should be quoted in full as above, is clear in its import and no one could examine the policies without leaving with the conclusion that the Universal Underwriters policies circumscribe the radius within which the vehicles may be used and the purposes to which they may be put to a much greater extent than the Lumbermens policies. Under the former, five vehicles were without policy protection if operated beyond the 50-mile limit, while under the latter policies the radius of operation of all vehicles was 150 miles. Under the Universal Underwriters initial policy certain cargoes were banned on commercial-type vehicles, while under the Lumbermens policies no such restriction was mentioned. This is an important aspect as some of the vehicles of Kildare Truck Line were used in the transportation of inflammable liquid substances.
Plaintiff undertook to procure for his client a renewal of the Lumbermens policies and Kildare Truck Line believed at all times he would do so, especially in view of the recitals of the letter of May 7, 1954, that the renewal would be “on the same basis.” No reason has been shown why Kildare Truck Line should have anticipated or expected that the Universal Underwriters policies would not offer the same, protection to the insured as the policies which were to be renewed. We do not know whether the plaintiff knew of the state of affairs existing, but if he did know, he should have called his client’s attention to the more-limited coverage of liability under the new policies. It must be remembered the truck line had to meet the requirements of the Louisiana Public Service Commission in the matter of liability insurance, and the mortgagees of Kildare Truck Line were also entitled to be assured that their interests were adequately protected.
We feel sure there was no bad faith on plaintiff’s part in making the statement the renewal would be on the same basis as he probably thought the coverage would be the same, but we also feel that he did not properly represent his client in that he did not obtain the coverage which the client required and which it thought necessary to protect its interests. After his letter to Kil-dare Truck Line, it was his duty to see to it he secured coverage similar to that provided by the Lumbermens policies or to notify the client otherwise.
*315 LSA-C.C. art. 3003 provides that the attorney is responsible not only for unfaithfulness in his management but also for his fault or neglect, and LSA-C.C. art. 3018 provides brokers, as other agents, are answerable for their fraud or faults. Defendants are endeavoring to measure their damage resulting from the fault attributed to their broker by taking the difference between the short rate cancellation proportion and that calculated on a prorata basis, and we think that this would be a fair, just and equitable way of computing the damages plaintiff must bear for his fault in the matter. Certain charges are borne by an insured when he cancels a policy of insurance and this is reflected in the short rate cancellation schedule, and when so cancelled the cost of the insurance for the term it was in force is greater than if the cancellation is made on a prorata basis. Under the circumstances of this particular case, we are not disposed to hold that the insured owes its agent the earned premium according to the short rate schedule but rather the defendants would be indebted to the agent for a pro rata of the premium, the difference being the damage we think the broker should pay. The conclusion of the trial judge below effects substantial justice in the premises.
Kildare Truck Line did not receive the Universal Underwriters policies until after it had ordered cancellation of the insurance. Anthony E. Fabacher, formerly the President of Kildare Truck Line and now one of its liquidators, testified he was under the impression at all times that the policies had been issued by the Lumbermens Mutual Casualty Company, and we think such impression was justified because on May 9, 19S4, plaintiff countersigned a certificate filed with the Louisiana Public Service Commission that “Lumbermens Mutual Casualty Company (Universal)” had issued to Kil-dare Truck Line the requisite automobile bodily injury and property damage liability insurance in accordance with the pertinent rules and regulations of the Commission. It was not until after July 1, 1954, that Fa-bacher became apprehensive of the insurance coverage, ordered cancellation thereof, and secured policies from another insurer.
Defendants argue that the amount of the judgment should be further reduced by excluding therefrom the amount of the premium charges on the tank trailers, the use of which vehicles was restricted by Warranty No. 2. In other words, they are contending that they are entitled to the credit which would be represented by the premium charged for protection they did not get. We do not understand their reasoning. If the policies had afforded full coverage, the premium charged certainly would have been commensurate therewith, but whereas the coverage was less, the costs of the policies were correspondingly less. Defendants are not entitled to any reduction in the amount.
For the reasons assigned, the judgment appealed from is affirmed.
Affirmed.