286 So.2d 504 (1973)
Oliver G. THOMAS
v.
HOUSE OF TOYOTA and Patrick J. Martin d/b/a Patrick J. Martin Ins. Co.
No. 9518.
Court of Appeal of Louisiana, First Circuit.
November 12, 1973.
*505 Curtis K. Stafford, Jr., Baton Rouge, for Patrick J. Martin Ins. Co.
James C. Lopez, Baton Rouge, for House of Toyota.
R. Waller Tillery, and William R. Weatherford, Baton Rouge, for appellee.
Before SARTAIN, TUCKER and WATSON, JJ.
WATSON, Judge ad hoc.
This is a suit arising from the alleged failure of the defendants to provide collision insurance coverage. The plaintiff, Oliver G. Thomas, Sr., purchased a used 1966 MG Midget automobile for the use of his son, Oliver G. Thomas, Jr. The selling dealer was the defendant, House of Toyota, and as a part of the transaction, this defendant collected the sum of $203.00 for the purpose of obtaining collision insurance. In this feature of the transaction, House of Toyota was acting as agent of the defendant insurance agent, P. Martin and Company, Inc.
Judgment was rendered in favor of plaintiff and against the defendants, House of Toyota and P. Martin and Company, Inc., in solido, in the amount of $882.95, subject to a credit of $292.92. These figures represented the amount of damage sustained by the automobile in question in a collision less certain premium charges refunded.
Only P. Martin and Company, Inc. has appealed from the adverse judgment rendered by the Baton Rouge City Court.
The parties have stipulated that the facts as stated in the trial court's written reasons for judgment shall be considered as findings of facts under LSA-C.C.P. art. 2131. Accordingly, we will quote the pertinent portions of the reasons assigned for judgment:
"The plaintiff is suing for damages in the amount of $882.95 representing the costs of repairing his 1966 MG Midget automobile that was involved in an accident on September 7, 1971. The plaintiff alleges that at the time of the purchase of the automobile he paid $203.00 for the purpose of obtaining collision insurance which said collision insurance was understood to have provided coverage for a person under 21 years of age, *506 namely, the plaintiff's son Oliver G. Thomas, Jr., who is shown by the evidence to be the real and actual owner of this automobile. It was shown that Oliver G. Thomas, Jr. was under the age of 21 years and was unable to purchase the automobile and the title was put in his father's name for convenience. At the time of the purchase the plaintiff made an actual cash down payment of $300.00 (as is seen on the retail buyer's orderP1). The balance of the purchase price was financed through Capital Bank and Trust Company. (Joint Offering No. 3). Both the chattel mortgage and the purchase order reflected that the amount of $203.00 was to be used for the purpose of purchasing collision insurance on the automobile. The buyer's order also shows that Martin had been contacted by Toyota in order to obtain a rate, said rate having been quoted as $203.00 by Candy Rogers, am employee of Martin at 4:15 P.M. on the date of the order. Joint Offering No. 5 shows that Martin sent an invoice to Toyota for $122.00 less an $18.30 commission or a net of $103.70 for providing collision insurance for Oliver G. Thomas, Sr., said invoice being dated February 17, 1971. This invoice was paid by Toyota along with other invoices for a total of $361.25 on April 27, 1971, as shown by said Joint Offering No. 5. The facts also show that on March 24, 1971, the Central National Insurance Company of Omaha, the writers of the collision insurance policy, actually provided for Oliver G. Thomas, Sr., mailed a notice of cancellation to said Oliver G. Thomas, Sr., stating that their policy would cease as of 12:01 A.M. April 3, 1971, without further notice. (Joint Offering No. 4). Shortly after the receipt of this notice of cancellation the plaintiff's son contacted Toyota who in turn referred the plaintiff's son to Martin. The evidence is clear that Martin advised the plaintiff's son that the only reason for the cancellation was the fact that young Oliver G. Thomas, Jr. was shown as the principal driver of the vehicle and the amount of money forwarded by Toyota to Martin was insufficient to provide this type of coverage, however, it should be noted that the amount of money originally quoted by Martin was sufficient to provide the type of insurance coverage which would allow a person under 21 years of age to drive a vehicle of this type. The testimony further reflects that Martin advised the plaintiff's son that he would be permitted to drive his car until April 3, 1971, after which date the insurance would expire. There is also evidence to the effect that Martin advised the plaintiff's son that he would attempt to obtain other insurance coverage and did in fact quote him a rate which was unacceptable to the plaintiff's son, however, said rate was the same as quoted to Toyota by Candy Rogers on January 27, 1971, at 4:15 P. M.
It should be noted here that the plaintiff in this case Oliver G. Thomas, Sr. did not testify because he is deaf and for the further reason that all of these matters were negotiated by his son Oliver G. Thomas, Jr., who was the main witness in this case insofar as plaintiff is concerned. It is true that the documents were in fact signed by Oliver G. Thomas, Sr. and that it was on his signature that the credit was extended in this matter, however, all of the evidence in this case given by the plaintiff comes from Oliver G. Thomas, Jr. rather than Oliver G. Thomas, Sr.
There is no evidence which indicates that the plaintiff's son was of the opinion that Martin would contact him about further insurance coverage, however, Martin's testimony indicates that he did not leave this impression with the plaintiff's son. The evidence is also clear that neither the plaintiff nor his son demanded the return premium and did not make an investigation into the matter of the $203.00 having been paid to Toyota and not having been forwarded to Martin.

*507 It is also equally clear that neither Toyota nor Martin made any attempt to determine why $203.00 had been paid by the plaintiff out of the proceeds of his loan, yet only $108.00 worth of insurance had been purchased.
On September 7, 1971, plaintiff's son was involved in an accident and his vehicle was damaged in the amount of $882.95. At this time the plaintiff's son called Martin and Martin advised him that there was no insurance on the wrecked car. Several more telephone calls and conversations ensued during the next several weeks and plaintiff's son was under the impression that Martin told him to have the car fixed at Custom Paint and Body Shop, however, Martin stated categorically that he did not agree to pay for having the car fixed at Custom Paint and Body Shop; he only suggested the shop because of the quality of service provided by said shop. It appears that there was no promise on the part of Martin to fix the automobile damage done to plaintiff's son's car.
Immediately prior to the trial of this case the plaintiff received the sum of $99.92 from Martin, this being reflected in Joint Offering No. 2 and received the sum of $100.00 from Toyota, this representing a return of monies unused for the purchase of collision insurance on the 1966 MG Midget.
It is the Court's opinion that once Toyota accepted the sum of $203.00 from the lending agency Capital Bank and Trust Company for the purpose of purchasing collision insurance that would cover an underaged driver, such as plaintiff's on Oliver G. Thomas, Jr., then at this time, that type of insurance should in fact have been purchased. It is also the opinion of this Court that Martin erred in billing Toyota in the amount of only $108.00 for collision insurance when in fact the amount should have been substantially more. This Court is of the opinion that both Toyota and Martin were under a duty to investigate the reasons for the discrepancy in the amount of money received and the amount of money actually paid to purchase the insurance, and the type of coverage actually afforded. It is also clear from the evidence that Toyota acted as a solicitor or a broker for Martin and for this activity received a commission on each policy of insurance sold.
Accordingly, it is this Court's opinion that there should be judgment in favor of the plaintiff and against the defendants, jointly and in solido, in the amount of $882.95, subject however to a credit of $100.00 which would have been the deductible in the event the policy of insurance had actually been issued and also subject to a credit in the amount of $192.92 representing monies refunded to the plaintiff immediately prior to this trial. In addition, defendants are to be cast for all costs and legal interest from date of judicial demand." (TR. 60-63).
We find that we are in accord with the conclusion reached by the trial court. There is no doubt that an insurance broker has a fiduciary responsibility to the insured as well as to the insurer, and that he is responsible for his fault or neglect. LSA-C.C. art. 3003; Fisk v. Kildare Truck Line, Inc., 112 So.2d 310 (La.App. Orl.1959); Kieran v. Commercial Union Insurance Company of New York, 271 So. 2d 889 (La.App. 4 Cir. 1973).
The trial court found the facts in the present case to be supportive of a conclusion that the appellant had breached his duty to appellee and held appellant liable. We find no manifest error in this conclusion. The judgment of the trial court in favor of appellee and against appellant is affirmed; costs of the appeal are taxed against appellant.
Affirmed.