## CENTRAL SURETY & INS. CORPORATION v. CANULETTE SHIPBUILDING CO., Inc.

### No. 2114.

Court of Appeal of Louisiana. First Circuit.

April 10, 1940.

L. V. Cooley, Jr., of Slidell, for appellant.

J. Monroe Simmons, of Covington, and Leslie P. Beard, of New Orleans, for appellee.

OTT, Judge.

The suit is to recover $1388.51 as earned premium on a policy insuring the defendant company against loss as an employer on account of compensation claims of employees arising under the compensation law of this State and the Longshoremen's and Harbor Workers' Compensation Act, 44 Stat. 1424, being Public Act No. 803 of the 69th Congress, approved March 4, 1927, 33 U.S.C.A. § 901 et seq. The policy was issued on August 1, 1936, and was to continue in force for three years unless cancelled under the terms of the policy. The premium was fixed on the basis of 3½ per cent of the monthly pay-roll of the defendant-employer, and the policy contained a provision that it could be cancelled by either party on giving ten days' written notice to the other party; if cancelled by the insurer, the earned premium should be adjusted on a pro rata basis; and if cancelled by the employer, the earned premium was to be computed on the short rate basis.

The policy was cancelled by the defendant-employer on August 23, 1938, by written notice to the agents of the insurance company, and this cancellation became effective on September 3d following. The insurer has computed the earned premium on the basis of 23 per cent of the estimated annual premium of the last year of the three year policy term, in accordance with the table for computing the earned premium on the short rate basis as fixed in the policy.

There are four defenses urged to the suit: (1) that the general agent of the insurance company who filed the suit for the corporation was not authorized to represent it for that purpose; (2) that the endorsements on the policy which specified the coverage under the policy were not counter-signed by a duly authorized agent in this State as required by law and for that reason the policy is invalid; (3) that the provision in the policy fixing the earned premium on a pro rata basis when cancelled by the insurer and on a short rate basis when cancelled by the insured is void for lack of mutuality; and (4) that it was agreed that the policy could be cancelled on the pro rata basis in the event that the employer could procure a cheaper premium rate any time during the three year period.

The trial court rendered judgment in favor of the plaintiff for the amount claimed in the suit. The defendant has appealed.

We will discuss the defenses in the order in which they are presented and urged in this court as well as in the trial court.

(1) The first paragraph of the petition recites that it is the petition of the Central Surety and Insurance Corporation, a foreign corporation authorized to do business in this State and "herein represented by W. V. Howland & Co., Inc., its agent." No exception was filed by the defendant in limine litis for lack of authority on the part of this agent to represent the plaintiff corporation in the suit, but, in the answer, the defendant denied the allegations of this paragraph.

As a lack of authority on the part of an agent of a corporation to file a suit on its behalf, or the want of capacity on the part of a plaintiff to stand in judgment in the suit, only goes to delay or retard the suit, it is obvious that any exception raising the question of such lack of authority or capacity would be a purely dilatory exception which should be filed and passed on before the filing of an answer and the trial on the merits. In fact, since the amendment of Article 333 of the Code of Practice by Act No. 124 of 1936, not only must such exceptions be pleaded specially before issue joined and at one and the same time, but such exceptions cannot be

allowed in the answer in any cause. The very purpose of having these dilatory exceptions filed and passed on before going into the merits is to avoid the useless expense and work involved in a trial of the merits when the suit might be dismissed on a purely dilatory exception. Gillon et al v. Miller, 15 La.App. 168, 130 So. 672; Guaranty Discount & Collection Co. Inc. v. McClure, La.App., 172 So. 564; Dunlevy Packing Company v. Juderman, 1 La.App. 476; Reisz v. Kansas City Sou. R. Co., 148 La. 929, 88 So. 120.

(2) Act No. 153 of 1918, the law in force when this policy was issued, requires that policies of this kind be issued and countersigned by a duly authorized representative who is a bona fide resident of this State, and further requires that the countersignature on all such policies, contracts and undertakings of insurance shall be in the handwriting of the resident agent of the company issuing the policy. The policy involved in this case was issued and signed in the handwriting of the resident agent, W. V. Howland & Co., Inc., through the written signature of W. V. Howland. There were three endorsements attached to the policy when it was issued and signed, and all three of these endorsements bear the type-written signature, "W. V. Howland & Company, Inc." over the printed words, "Resident Agent."

The first of these endorsements refers to the fixing of a monthly premium under the policy on the basis of the monthly payroll, and the second endorsement is intended to extend the protection to the employer to cover compensation under the Longshoremen's and Harbor Workers' Compensation Act. Both of these endorsements provide that they shall form a part of the policy when countersigned by an authorized representative of the company and attached to the policy. The third endorsement extends the coverage under the policy to include liability under the Employer's Liability Law of this State, Act No. 20 of 1914, and provides that the endorsement is attached to and forms part of the policy.

■ It is the contention of the defendant that the policy is invalid because these endorsements were not properly signed by the resident agent of the company. The endorsements are securely pasted to the policy and there is no claim that they were not so attached when the policy was signed by the resident agent. When the resident agent countersigned the policy these endorsements were as much a part of it as any other printed or typewritten provisions contained therein. 17 C.J.S., Contracts, p. 716, § 299; Goldman et al. v. North British Merc. Ins. C., 48 La.Ann. 223, 19 So. 132.

As the endorsements were part of the policy contract and as such binding on the parties to it, and as the policy was properly signed by the resident agent, there was no failure to comply with Act 153 of 1918 in this respect. The entire contract was embraced in one document with all provisions attached and included when the contract was confected and delivered. Had other provisions been added subsequently to the contract extending or restricting its terms, undoubtedly any endorsement later attached to the policy for this purpose would have required the signature of the resident agent the same as the original policy, because this would have been a new or additional contract.

■■ In view of the conclusion which we have reached as to the validity of the policy and the endorsement attached thereto when issued, we do not deem it necessary to apply the principle of estoppel invoked by plaintiff. However, if it were necessary to apply this principle, we think there would be ample authority for doing so in this case, as the defendant received and accepted the benefits under the very provisions of the endorsements which it now claims to be invalid because not properly signed. These benefits to the defendant would have been no greater and no less had the endorsements been properly countersigned by the resident agent. Moreover, the defendant company continued to accept these benefits and recognized the validity of the policy after its officers found out that the endorsements were not properly countersigned. It is a well established principle that a party cannot voluntarily accept the benefits flowing from a contract and then when sued by the other party to enforce some provisions of the contract from which the benefits arose, set up the illegality of the contract on account of some informality in its confection. Burk v. Livingston Parish School Board, 190 La. 504, 182 So. 656; Turfitt v. Police Jury of Tangipahoa Parish, 191 La. 635, 186 So. 52; 17 C.J.S., Contracts, p. 419, § 69.

(3) Perhaps the most serious defense is the lack of mutuality in the provision for fixing the earned premium in case of

the cancellation of the policy by either party. The advantage accruing to the insurer in this respect can be seen from the fact that in exercising its right to collect the earned premium on the short rate basis it will receive $1388.51, whereas if the policy had been cancelled at the insurer's request, the insured would have received the benefit of the pro rata rate, which it is shown in this case is $562.45, or an advantage in favor of the insurer of $826.06. The defendant claims that this clause in the policy is void for lack of mutuality in penalizing the defendant in the exercise of his right to cancel the policy, whereas the plaintiff suffers no penalty at all in the exercise of its right to cancel the policy.

There is no doubt of the right of parties to a contract to fix the terms on which either party may cancel the contract, but it is equally true that the penalty imposed upon one party for exercising such right cannot be to his sole advantage and without some advantage accruing to the other party in case he exercises the same right to cancel the contract. 17 C.J.S., Contracts, p. 888, § 399. However, these provisions in policies of insurance whereby the insurer is permitted to charge a higher rate for the earned premium when the policy is cancelled at the request of the insured than when cancelled at the instance of the insurer are generally upheld on the ground that the cost to the insurer during the period that the risk has been carried justifies the higher rate. This cost includes the expense for writing the insurance, the overhead charges, such as taxes, licenses, general office expenses, etc. 26 C.J. 146.

Of course, it can also be argued that the insured may be put to a great deal of expense and incur risk of great loss where a policy insuring him for a specified time is cancelled by the insurer; for instance, the insured might be unable to get other insurance, or through no fault of his, he might be required to pay a much higher rate for protection for the same period of time. The civil law, even more than the common law, contemplates that, in a commutative contract, a certain amount of equality should exist between the parties in their engagements, that is what is given or received by one should not be greatly out of proportion to what is given or received by the other.

While no case in this State has been cited or found by us which upholds agreements in insurance policies providing for their cancellation on the short rate basis when cancelled at the request of the insured and on a pro rata basis when cancelled at the instance of the insurer, yet these provisions have been upheld in other states. See State Fair of Texas v. Seay, Tex.Civ.App., 98 S.W.2d 232; Sampson v. Texas Employers' Ins. Association, Tex. Civ.App., 129 S.W.2d 1159. In the absence of any specific holding on this point in our State, we feel constrained to follow the rule prevailing in other states.

(4) We find no proof in the record to support the allegation of the defendant that there was an understanding that the policy could be cancelled pro rata if it developed that the rate charged was excessive, and that the defendant would stand to lose nothing by taking a policy for three years. The only thing in the record that might indicate some agreement along this line is a letter written by the agent of plaintiff to the defendant in August, 1936, in which the agent gives reasons for renewing the policy for three years and states: "You stand to lose nothing by accepting a three year policy, because the contracts can be cancelled pro rata, on any anniversary date". The policy was not cancelled on an anniversary date, and this statement or promise could have no bearing. Moreover, it is not shown that the defendant could or did procure any better rate, but, on the contrary, other insurance was obtained at the same rate as that fixed in the policy issued by the plaintiff.

Finding no error in the judgment appealed from, the same is hereby affirmed at the cost of the appellant in both courts.