306 So.2d 406 (1975)
Thomas H. FOWLER, Jr., Plaintiff-Appellee,
v.
GULF INSURANCE COMPANY, Defendant-Appellant.
No. 4818.
Court of Appeal of Louisiana, Third Circuit.
January 15, 1975.
Rehearing Denied February 5, 1975.
*408 Bolen & Halcomb by Roy S. Halcomb, Jr., Alexandria, for defendant-appellant.
John M. Sherrill, III, Alexandria, Thomas H. Fowler, Jr., Monroe, for plaintiff-appellee.
Before FRUGÉ, DOMENGEAUX and WATSON, JJ.
WATSON, Judge.
Plaintiff, Thomas H. Fowler, Jr., an attorney, was injured on May 4, 1972, while a passenger in an automobile owned by Louis Mac Ray and driven by Van McNair. Plaintiff filed suit to recover for the injuries received in the accident and obtained a verdict in the trial court against defendant, Gulf Insurance Company, the insurer of the Ray vehicle, as follows:

 Pain and suffering: $40,000.00
 Permanent disability: $50,000.00
 Medical expenses: $ 3,274.09
 __________
 Total: $93,274.09

The defendant insurance company has appealed, alleging that the trial court erred as follows:
1. Denying defendant the right to introduce certain evidence;
2. Finding policy coverage for the accident;
3. Failing to find plaintiff guilty of independent or contributory negligence;
4. Making an award of $50,000 for permanent disability, defendant contending that the amount is manifestly excessive and unsupported by the evidence.
As the trial court stated in its reasons for judgment, the $40,000 awarded for pain and suffering and the $50,000 awarded for permanent disability were the maximums that could be awarded under the pleadings, plaintiff having alleged damages in those amounts in his petition.
In ruling on defendant's motion for a new trial on the question of plaintiff's permanent disability, the trial court pointed out that plaintiff's right hand is small and atrophied; the skin is shiny and slick; the fingers are frozen in a fixed position; and the hand amounts to nothing more than a claw. The trial court stated that plaintiff's ability to try cases and check titles is impaired, his social life is affected and he is unable to participate in many hobbies and sports.
The testimony was as follows:
Plaintiff, Thomas H. Fowler, Jr., testified that he is an attorney and was involved in an automobile accident on Highway 165 North about seven miles south of Monroe on the night of May 4, 1972. Plaintiff was using a 1970 Plymouth Duster owned by one of his clients, Louis Mac Ray, and the automobile was being driven at the time of the accident by Van McNair. The driver went off the road onto the gravel shoulder and lost control of the automobile, which turned end over end into the left ditch. Plaintiff's hand went through the window, and the glass caused his primary injury to the right hand. After the accident, plaintiff was in St. Francis Hospital for 30 days where he had surgery twice and then in the V. A. Hospital in Shreveport for another 30 days for intensive therapy. Plaintiff testified that he experienced considerable pain in his hand and wrist and was still having discomfort as of the time of trial. He is righthanded and unable to write except to sign his name. Although he could formerly type 60 words a minute and used this ability in his practice, he can no longer type. Plaintiff *409 testified that he is able to drive but no longer likes to do so because of his lack of use of the right hand. Plaintiff testified that his principal hobby is fishing; he now requires help with his fishing rig. He had known Van McNair by sight for a long time and picked him up on the highway around Ball or Tioga when he recognized his face. McNair offered to drive after they had driven about 10 miles and plaintiff let him do so. They stopped at a bar where plaintiff had one drink and took another with him and McNair had half a can of beer. Plaintiff testified that he did not ask McNair about his driving because McNair's father was in the used car business in West Monroe and he had often seen McNair driving used cars. Prior to the accident, plaintiff observed McNair's driving for some ten miles and McNair had been driving well. Plaintiff was treated after the accident by Dr. Frank X. Kline, Jr. and Dr. Jack Tom Jackson of Monroe.
Louis Mac Ray testified that he is in the investment business and was represented by plaintiff. Plaintiff used one of Ray's cars whenever he wanted or needed one. Ray testified that he normally had four automobiles and insurance coverage for four. In 1972, he purchased an Oldsmobile Toronado to replace a Cadillac and a Plymouth Duster to replace a Mustang.
Ray testified that he relied entirely on Mr. Daniel Page Ferguson of Humphries Insurance Agency to maintain insurance coverage on his automobiles. Plaintiff's exhibit 3 and defendant's exhibit 8 is a letter written by Ray to Humphries Insurance Company dated April 20, 1972, which states in part:
"Please substitute a 1971 Oldsmobile Toronado, Serial Number ..., and a 1970 Plymouth Duster, Serial Number..., for the 1971 Ford Mustang and the 1971 Cadillac .... transfer the full coverages to the Oldsmobile and the Plymouth...."
Ray testified that he was forced to hire other counsel because of plaintiff's accident and paid Mr. Joseph Lesage of Shreveport something over $18,000 for attorney's fees in a case which plaintiff had been handling, and Mr. Charles Rine around $7,000 for another matter that plaintiff had been handling prior to his accident. Ray testified that these fees, amounting to $25,000, would have been earned by plaintiff. He mentioned another case where he received a judgment of $75,000 which plaintiff had had on a 40% retainer prior to his accident and for which Ray employed a Mr. Bolin, an attorney in Columbus, Ohio.
Daniel Page Ferguson testified that he had been in the general insurance business for 23 years and was employed as manager of Humphries Insurance Company in West Monroe from October of 1968 or 1969 until September 5, 1973. He represented eight or ten insurance companies, among them Gulf Insurance Company, defendant, and handled insurance coverage for Ray and his corporations. Ray generally asked for coverage by letter. Ferguson received the letter identified as P-3 and D-8 but procrastinated, and the accident happened before the substitution was made. Ray was billed for his insurance coverage on a monthly basis. At the time of the accident, Ray had a personal insurance policy covering four automobiles, the inception date being July 26, 1971 and the expiration date July 26, 1972. The policy had not been cancelled as of the accident on May 4, 1972. It had not been countersigned by Ferguson. Ray had double coverage with Gulf Insurance Company on two of his automobiles, since they were also listed in a policy insuring Ace Investment, Ltd. and/or Allstate Diesel Co., Inc. Ferguson said the accident created an embarrassing situation since he had received the letter requesting a substitution from Ray but had not made the change, and he also discovered at that time that there was double coverage on these two automobiles. Humphries *410 Agency was not a sole agent for Gulf Insurance Company and not a direct employee of that company. Ferguson had binding authority with Gulf Insurance Company. Ray did not specify from what company he wanted insurance. Gulf Insurance Company paid a collision loss on the 1970 Plymouth Duster and a medical payments loss, but Ferguson did not know under which insurance policy the sums were paid.
Danny Warner testified that he was working in Ouachita Parish as a State Trooper on May 4, 1972, where he investigated the accident in question about 9:54 p. m. The one-car accident involved a Plymouth Duster which had been traveling north toward Monroe and was being driven by Van McNair, a 16-year-old juvenile who did not have a driver's license. The trooper did not talk to Fowler. Fowler was bleeding profusely, and he was given primary first aid. Trooper Warner's testimony about a charge against McNair and what McNair said was objected to, and the objections sustained. An offer of proof was made which contained the following testimony by Warner:
"The boy also stated that after he started driving Mr. Fowler offered him a can of beer which he accepted and he also stated he drank about half a can which I come to the conclusion everybody who is in a wreck had half a can so since there was an injury, since he did not have a driver's license, that's the reason I charged him with the DWI.
"Q Did you later ascertain that he didn't have sufficient amount of alcohol in his blood to sustain the DWI?
"A Not the _____ test, he was under the level. He was .012 which is very low." (TR. 198)
The trial court correctly excluded this evidence. McNair's statements were hearsay, and the trooper was not qualified as an expert in alcohol tests.
W. Joseph Schouest testified that he is an employee of Gulf Insurance Company and corresponded with Ferguson in connection with insurance for Ray. The initial application by Ferguson for automobile insurance coverage for Ray was turned down by the company because of no supporting business. Ferguson replied that there was supporting business and Mr. Schouest turned down the application a second time because of an under age driver. Following the second communication, Ferguson contacted Schouest to notify him that an accident had occurred during the binder period for the policy. This prior accident occurred in August of 1971. The company then agreed to issue the policy, and it was issued by a computer in Dallas. Schouest testified that neither of the policies issued to Ray had ever been cancelled.
Introduced into evidence as D-3 was Gulf Insurance Company's personal automobile policy issued to Louis M. Ray showing a policy period of July 26, 1971 through July 26, 1972 and listing four automobiles, as follows:
1971 Cadillac
1971 Ford Mustang
1970 Mustang
1966 Oldsmobile
It was undisputed that none of the provisions for cancellation in this policy were complied with by Gulf Insurance Company, and no notice of cancellation was sent to Ray.
Introduced in evidence as P-5 is a letter from W. Joseph Schouest to Louis M. Ray dated May 22, 1972, advising that Gulf Insurance Company would not renew the coverage under the above Policy #3 44 76 92, expiring July 26, 1972. Introduced into evidence as P-6 was a letter to Louis M. Ray from Dan P. Ferguson dated July 21, 1972, advising that Gulf Insurance Company Policy #3 44 76 92 in effect on a 1971 Oldsmobile Toronado, a 1970 Plymouth Duster, a 1970 Mustang and a 1966 Oldsmobile *411 would expire on July 26, 1972, and that Ferguson would make arrangements to bind coverage as of the date of expiration.
A deposition of Dr. Frank X. Kline, Jr. was introduced into evidence. Dr. Kline testified that he was a physician specializing in orthopedic surgery and saw plaintiff in St. Francis Hospital emergency room about 10:20 p.m. on May 4, 1972. Mr. Fowler had a laceration of the right wrist which had stopped circulation and sensation in the hand. Dr. Kline made an initial diagnosis of laceration of the radial and ulna arteries, all of the flexor tendons to the wrist and fingers and all of the structures on the volar aspect of the wrist. Mr. Fowler was in hemorrhagic shock and this was corrected in preparation for surgery. Exploration of the wound showed that both arteries were cut and Dr. Kline asked Dr. Jack Tom Jackson to assist in the repair of the arteries. Dr. Jackson carried out surgical repair of the radial and ulna arteries and circulation returned to the hand. Dr. Kline then repaired all of the tendons and the medial and ulna nerves and closed the wound. Mr. Fowler remained in the hospital until May 30, 1972. He had post-operative fever and infection, and the wound was opened up several times for drainage and debridement of damaged and dead tissue. The patient had considerable discomfort because the median nerve ran across the middle of the incision, where the debridement was carried out. He was given antibiotics and pain relievers and subsequently went to receive therapy at the V. A. Hospital in Shreveport. When the patient returned to Monroe from the V. A. Hospital, Dr. Kline prescribed further therapy and splinting of the fingers. Dr. Kline last saw Mr. Fowler on October 8, 1973, when the hand appeared slightly atrophic. The skin had a glassy appearance and the fingers showed partial denervation of the hand. Dr. Kline stated that Mr. Fowler had 100% functional loss of use of the hand, as well as atrophy of the forearm from lack of use. Dr. Kline was not optimistic as to the possibility of improved function from further surgery. Dr. Kline testified that the results of his surgery had been disastrous because of the post-operative infection. Dr. Kline stated that he felt plaintiff might experience pain or discomfort in using his hand.
Dr. Cedric Warren Lowery, stipulated as an expert in orthopaedic medicine, testified that he examined Thomas H. Fowler, Jr. on September 17, 1973, on behalf of defendant, and diagnosed his injuries as a laceration of the right forearm with severance of multiple tendons and probably the medial nerve and radial artery. X-rays showed osteoporosis of the arm, and Dr. Lowery evaluated plaintiff's functional loss of use of the right hand at 100%.
I. Defendant contends that it was prejudiced by the trial court's refusal to allow defendant's employee, Schouest, to testify concerning an alleged intention on the part of defendant to issue a policy to Ray only for a limited purpose. The trial court correctly pointed out that the policy was issued for a certain period of time and had not been cancelled. See I. C. Realty, Inc. v. Clifton Conduit Company, Etc., 291 So. 2d 422 (La.App. 4 Cir. 1974). Any question of the company's intention in issuing the policy was immaterial. LSA-R.S. 22:628 specifically provides that:
"No agreement in conflict with, modifying, or extending the coverage of any contract of insurance shall be valid unless in writing and made a part of the policy."
Schouest admitted that the policy had not been cancelled, and it is clear from his letter to Ray of May 22, 1972, (P-5) advising that the coverage would not be renewed that the company knew this policy was in existence.
It is well settled that an insurance contract sets out the terms of the agreement between the parties thereto. Correspondence between the defendant insurance company and its agent, Humphries Agency, *412 Inc., could not affect the term of the insurance company's agreement with Ray as set forth in its policy. Apparently, the only communication between Gulf Insurance Company and Ray occurred after this accident when Schouest sent Ray his letter of May 22.
II. Defendant contends that Policy #3 44 76 92, Ray's personal automobile insurance policy with Gulf Insurance Company, was not in effect at the time of this accident because:
A. The policy was not countersigned by Ferguson on behalf of Humphries Agency, Inc.; and
B. There was no agency relationship between Gulf Insurance Company and Humphries Agency, Inc.
A. In regard to its argument concerning the lack of a counter signature on the policy, defendant cites LSA-R.S. 22:1171 which states in part as follows:
"All policies of insurance ... shall be signed or countersigned by an agent licensed under this Part who is a resident of this state and who is compensated on a commission basis."
In this regard, Ferguson testified as to why the policy had not been countersigned:
"There was no particular reason for it, it could have been countersigned any time before delivery." (TR. 153)
It is clear that Ferguson thought the policy was in effect as indicated by defendant's exhibit #2, a letter from Dan P. Ferguson to one of defendant's attorneys, Mr. James A. Bolen, Jr., dated August 28, 1973, wherein Ferguson stated in regard to policy #3447692:
"The premium for the above policy was not paid at the time of the accident but has been subsequently paid to the agency.
"A collision loss was paid under this policy in the amount of $1610 as a result of the same accident. It would be difficult for me to say that no policy had actually been issued."
No allegation is made that Gulf Insurance Company refused to accept the premium on this policy. Apparently, the company not only issued a policy and accepted a premium but even paid some benefits before claiming that the policy was not valid because of its agent's failure to countersign the policy. To quote from the case of Central Surety & Ins. Corp. v. Canulette Shipbuilding Co., 195 So. 114 (La.App. 1 Cir. 1940):
"It is a well established principle that a party cannot voluntarily accept the benefits flowing from a contract and then when sued by the other party to enforce some provisions of the contract from which the benefits arose, set up the illegality of the contract on account of some informality in its confection." 195 So. 116.
B. Defendant also contends that this policy was not in effect because defendant is not bound by the acts of Humphries Agency, Inc. This argument ignores the fact that the insurance policy in question was issued by the defendant company. Gulf Insurance Company issued this policy, apparently accepted a premium and took no steps to have the policy cancelled. Defendant cannot claim a release from the terms of its policy on the basis of some action or inaction by the Humphries Agency, Inc.
III. Defendant contends that plaintiff was guilty of independent negligence in allowing an unlicensed minor to drive his vehicle after the minor had been drinking and in failing to properly supervise the minor's driving.
Plaintiff Fowler testified that McNair had only half a can of beer which he purchased *413 for himself (TR. 198-199); that McNair offered to drive the car (TR. 94-95), which would lead most to assume that he was a licensed driver; that Fowler had previously seen McNair driving (TR. 96); that McNair was driving well prior to the accident and showed no signs of intoxication (TR. 96); that McNair appeared to be eighteen or nineteen years old; and that Fowler observed McNair's driving from the right front seat for about ten miles after letting McNair drive (TR. 95, 112). McNair was apparently old enough to have a driver's license. Even a 15-year-old motorist is not per se incompetent or negligent merely because of his youth. Nelson v. Carriere, 68 So.2d 801 (La.App. Orl.1953). Trooper Warner testified that McNair was nervous following the accident but appeared to be all right, not overly excited and more normal than otherwise. The evidence is insufficient to show that Fowler was negligent in allowing McNair to drive, or, if he were negligent, that this negligence was a cause in fact of plaintiff's injuries.
IV. Defendant contends the award for plaintiff's permanent disability is manifestly excessive. This contention is founded on an argument that the 100% loss of use of a right hand by a righthanded attorney is not disabling due to the nature of his work. The trial court specifically enumerated some ways in which his personal observation indicated that plaintiff was handicapped in his profession by his injury. Our function is not to substitute our judgment for his in assessing damages. LSA-C.C. art. 1934; Miller v. Thomas, 258 La. 285, 246 So.2d 16 (1971); Gaspard v. LeMaire, 245 La. 239, 158 So. 2d 149 (1963); Ballard v. National Indemnity Company of Omaha, Neb., 246 La. 963, 169 So.2d 64 (1964); Lomenick v. Schoeffler, 250 La. 959, 200 So.2d 127 (1967), and Spillers v. Montgomery Ward & Company, Inc., 294 So.2d 803 (La.1974).
V. In supplemental brief, defendant-appellant contends that the trial court erred in failing to specify under which of Ray's policies it based its award to plaintiff and that an award under either policy was erroneous. Counsel for defendant stated in oral argument in the trial court that:
"We've already agreed at the pre-trial to introduce a true copy of the policy on Mr. Ray, XXX-XX-XX. The other one is not even involved in the lawsuit." (TR. 67)
Further, counsel for defendant stated as follows:
"The plaintiff has only sued here alleging a policy of insurance on Louis M. Ray, which is the sole allegation in plaintiff's petition, ..., it was the only policy discussed at pretrial, there is no allegation here of any other parties being sued outside of Gulf Insurance Company as the insurer of Louis M. Ray." (TR. 69)
There appears to be little real question, according to the admissions of defendant's counsel, that judgment was rendered on Ray's personal insurance policy, number 3447692.
Defendant contends that Ferguson's failure to make the change of coverage requested in Ray's letter of April 20, 1972, resulted in there being no coverage under Ray's personal policy. The knowledge of a change in automobiles given to Ray's insurance agent, Ferguson, is imputed to defendant, Gulf Insurance Company. Mathews v. Marquette Casualty Company, 152 So.2d 577 (La.App. 2 Cir. 1963), certiorari denied, 244 La. 662, 153 So.2d 880. In the instant case, the situation is even stronger than that cited, because here there was only a change in the automobiles covered rather than an additional automobile as in Mathews, supra. We find no merit to the argument that the notice to Ferguson *414 and Humphries Agency, Inc. should not be sufficient to provide coverage.
For the foregoing reasons, the judgment of the trial court is affirmed. All costs are assessed to defendant-appellant, Gulf Insurance Company.
Affirmed.