949 So.2d 490 (2006)
LOUISIANA SAFETY ASSOCIATION OF TIMBERMEN SELF INSURERS FUND, Plaintiff-Appellee
v.
COURTNEY CONSTRUCTION COMPANY OF ALEXANDRIA, INC., Courtney Equipment Company, Inc. and Transwaste, Inc., Defendants-Appellants.
No. 41,564-CA.
Court of Appeal of Louisiana, Second Circuit.
December 13, 2006.
Opinion Denying Rehearing January 13, 2007.
*493 Stamey & Miller, LLC, Natchitoches, by J. Mark Miller, for Appellants.
Provosty, Sadler, deLaunay, Fiorenza & Sobel by Joseph J. Bailey, Ricky L. Sooter, Alexandria, for Appellee.
Before BROWN, LOLLEY & SEXTON (Pro Tempore), JJ. BROWN, STEWART, MOORE, LOLLEY & SEXTON (Pro Tempore), JJ.
SEXTON, J.
Defendants Courtney Construction Company of Alexandria, Inc. ("Courtney Construction"), Courtney Equipment Company, Inc. ("Courtney Equipment") and Transwaste, Inc. appeal the trial court's judgment in favor of Plaintiff Louisiana Safety Association of Timbermen Self Insurers Fund ("LSAT"). Plaintiff sued Defendants alleging it was owed unpaid premiums for workers' compensation insurance for 1992 through 1995. After a bench trial, the trial court awarded Plaintiff $120,615.12 for fund years 1994 and 1995 against all three Defendants, in solido, plus ten percent per annum interest and $25,000 in attorney fees.[1] Defendants appeal. In addition to this appeal, Defendants filed a motion to remand based on newly discovered evidence. For the foregoing reasons, we deny the motion to remand and affirm the judgment of the trial court.

FACTS
In 1992, Plaintiff issued a single policy, number 50414, effective November 5, 1992, for workers' compensation insurance to cover the employees of all three Defendants. Plaintiff is a self-insurer fund offering workers' compensation insurance. Defendants are three separate companies involved in industrial activities. Courtney Construction was owned by Jack Courtney, Jr. and its operations include highway paving, construction and concrete paving. Jack Courtney, Jr. also owned Courtney Equipment which sold and repaired construction equipment. Transwaste was owned by Jeff Courtney, son of Jack Courtney, Jr. It operated a facility for receiving collected waste materials, which were sorted and loaded onto trailers for transportation to landfills. Courtney Construction and Courtney Equipment are located at the same site, while Transwaste's facility is located two miles away from them. All three businesses are run out of the same office complex with Jack Courtney, Jr.'s office across the hall from Jeff Courtney's office. They shared a single office manager.
Defendants obtained insurance coverage from Plaintiff through a membership application and agreement (the "Agreement"). This Agreement is the basis of Plaintiff's claim. All three Defendants are named as insureds in the Agreement. Under the ownership section of the Agreement, Jack Courtney is listed as president of Courtney Construction and Courtney Equipment and Jeff Courtney is listed as president of Transwaste. It is signed only by Jack Courtney as President of Courtney Construction *494 and by the insurance agent, Bruce Yates.
The premiums for this policy were determined by an annual audit conducted by an independent auditor. The auditor conducts the audit by requesting payroll and other related documents from the insured, meeting with the insured to obtain any information he might need and calculating the total annual premium for the audited fund year. As part of the audit, the auditor assigns codes to the various employees of Defendants as governed by the SCOPES manual.
The SCOPES manual is a publication by the National Council on Compensation Insurance (NCCI) for the determination of workers' compensation premiums. The codes correlate to a rate used to determine the premium for that category of employee. Auditor James Parker performed three audits for fund years 1993, 1994 and 1995. Auditor Nancy Fugler O'Neal performed a re-audit of the 1994 fund year.
Also in dispute is the code classification of some of the drivers at the Transwaste facility, and, thus, the appropriate premium to be charged for those employees. As described by Jeff Courtney, third party garbage collectors, such as municipal garbage collectors, would drop off their truck loads of garbage at Transwaste's facility. The garbage was sorted for any recyclables or botanical green matter, then loaded into trailers and driven to a pick up site near the front of the property. Other drivers would then pick up the trailers and transport them to the landfill. Mr. Courtney described this operation as a "hook and pull" system where the driver simply backed up to the loaded trailer, hooked it up and pulled it away. The driver did not load the trash and the trash was unloaded at the landfill by the mechanisms built into the trailer. Mr. Parker assigned code 7219-Trucking NOC to these drivers as requested by Defendants.[2] Defendants dispute the use of this code. At trial and on appeal, they argue that code 7380-Drivers, Chauffeurs & Their Helpers NOC-Commercial should apply. Use of code 7380 instead of code 7219 would result in lower premiums.
In October 1996, Plaintiff sued Defendants for $125,959.12, together with ten percent per annum interest and attorney fees. The petition alleged that Defendants failed to pay premiums on the policy for fund years 1992, 1993, 1994 and 1995. A judgment was finally signed in this case in February 2006. For the fund year 1994, the trial court awarded Plaintiff $73,120.10, together with interest in the amount of ten percent per annum from October 27, 1995, until paid. For the fund year 1995, the trial court awarded Plaintiff $47,495.02, together with interest in the amount of ten percent per annum from October 8, 1999, until paid. The trial court awarded Plaintiff $25,000 in attorney fees. The entire judgment was against all three Defendants, in solido. Defendants appeal this judgment, asserting eleven assignments of error.
After the appeal was filed, Defendants filed a Motion to Remand for newly discovered evidence. They assert that, in cleaning a closet, they found some documents from Plaintiff regarding the policy that listed Transwaste separately on documents. This court referred the decision on this motion to the merits of this appeal.

DISCUSSION

Motion to Remand for Newly Discovered Evidence
We first consider the motion to remand submitted by Defendants. For the reasons set forth below, the motion is denied.
*495 The power to remand a case without rendering a decision so the trial court can receive new evidence requires the appellate court to set aside the existing judgment; such a power should be exercised sparingly. Love v. AAA Temporaries, Inc., 03-1460 (La.10/17/03), 858 So.2d 410. A remand for new evidence is proper when the evidence was unobtainable with due diligence for the original trial and the new evidence is likely to affect the outcome of the case. Id.; Herbert v. Travelers Indemnity Co., 255 La. 645, 232 So.2d 463 (1970). Defendants fail to meet either requirement.
According to Defendants, they discovered the new evidence after the trial judge signed the order of appeal. Defendants discovered a certificate of membership issued by Plaintiff solely to Transwaste and a monthly premium report document listing only Transwaste as the member company. These documents were said to be found in a box with additional documents regarding insurance coverage from Plaintiff. The box was allegedly in a storage area on Transwaste's facility labeled to be transferred to Transamerica Waste Industries, Inc. (Transamerica) to which Transwaste had been sold on June 9, 1995. The box was allegedly discovered while cleaning out the storage room after the trial. Defendants argue that the two newly discovered documents would be crucial to determining whether the obligation is in solido or divisible. By showing that Plaintiff initially issued Transwaste a separate policy, Defendants argue that the parties did not intend a solidary obligation.
According to Plaintiff in its opposition to the motion to remand, in its underwriting file, as provided to Defendants, were several copies of documents listing only Transwaste, Inc. as insured. These documents were titled "Certificate of Insurance." A comparison of those certificates of insurance to other certificates of insurance in the underwriting file that include all three Defendants reflects that the Courtney Companies were typed under "Insured" in a different font and a darker ink. Such a difference gives Defendants the ability to argue and cross-examine witnesses on whether Transwaste was considered a separate insured or initially issued a separate policy. The newly discovered documents do not provide Defendants with a previously unavailable defense.
The weight of the newly discovered documents is minimal. The newly discovered certificate of insurance issued solely to Transwaste, Inc. is issued for policy number 50414. That policy number has been the only policy number to appear on documents related to the joint policy of Defendants and appears on the certificate listing all three Defendants. Further, the newly discovered monthly premium report lists only Defendant Transwaste, Inc. as the member company name, but includes Defendants Courtney Construction and Courtney Equipment under the classification of operations. The monthly report is also incomplete. Only the rates, experience modifier and prompt payment discount are filled in. This report does not appear to be an actual bill for which payment is due. Against the history of combined billing and payment, this report does not carry significant evidentiary weight. We conclude that the documents would not affect the outcome of the case.
In addition, Defendants cannot demonstrate that these documents were unobtainable with due diligence. These documents were always in Defendants' possession. At the time of trial in September 2005, this suit had been pending for nearly nine years. Defendants had the time, reason and ability to locate all relevant documents in their possession.
*496 Moreover, this is the second time in this litigation that Defendants produced evidence that was conveniently discovered in their possession, but that they previously were unable to find. Concerning the sale of Transwaste to Transamerica, including transferring all accounts payable, Defendants at trial produced three documents, Exhibits D-9 through D-11. The documents were verified through the testimony of Jeff Courtney, president of Transwaste, during the period at issue. These documents, however, were not provided at the deposition of either Mr. Courtney or his officer manager, Donna Spillers, despite the issuance of subpoenas decus tecum for both depositions to produce all relevant documents. Donna Spillers produced no documents at her deposition, although she was the corporate appointee to locate such documents. At his deposition, Mr. Courtney was unclear about the assignment of accounts payable in the sale to Transamerica. At trial, he testified that these documents, found after the deposition, "brought things back to light." This clarity on the assignment of accounts payable works in Defendants' favor and is the cornerstone of one of their assignments of error in this appeal on the merits. The trial court further questioned whether these documents were even timely provided to the other side as per its scheduling order. This prior instance of untimely document discovery does not support Defendants' position that the documents at issue in this motion to remand were unobtainable with due diligence. Their prior document production history indicates a pointed lack of due diligence. For these reasons, the motion to remand is denied.

Appeal on the Merits
Defendants challenge the merits of the judgment asserting eleven assignments of error. These assignments can be condensed to three arguments. First, Defendants attack the validity of the Agreement. Second, they argue that the audits were faulty and, as such, were insufficient evidence of the amount due. Third, Defendants challenge the amount of the attorney fees and the awarding of interest on a per annum basis.
Our review of the factual findings in this case are governed by the manifest error/clearly wrong standard of review. An appellate court may not set aside a trial court's finding of fact unless it is manifestly erroneous or clearly wrong. Rosell v. ESCO, 549 So.2d 840 (La.1989). To set aside a factual determination by the trial court, this court must 1) find from the record that a reasonable factual basis does not exist for the finding to the trial court and 2) determine that the record establishes that the fact finder is clearly wrong (manifestly erroneous). Theriot v. Lasseigne, 93-2661 (La.7/5/94), 640 So.2d 1305.

Validity of the Membership Agreement
Plaintiff issued Defendants insurance based on the Agreement listing all three Defendant companies as insureds. Defendants attack the validity of the Agreement as to Transwaste asserting that Jeff Courtney never signed the Agreement on behalf of Transwaste. Only Jack Courtney, Jr. signed the Agreement and then only as president of the Courtney companies. Further, neither Plaintiff's administrator nor its underwriter signed the Agreement. Defendants contend that both the lack of a signature on behalf of Transwaste and the absence of Plaintiff's signature make the contract void for lack of consent. The trial court found that the Agreement was consensual and binding to all parties. The trial court adopted Plaintiff's post trial memorandum as an accurate account of the facts of the case. In the memorandum, Plaintiff, and by adoption the trial court, established that Jack *497 Courtney Jr. was authorized to obtain insurance for all three Defendants. We agree.
Defendant Transwaste consented to the insurance policy by both actual authority given to Jack Courtney, Jr. as its mandate and by ratification by accepting the benefits of the Agreement. At trial, Jeff Courtney testified that he knew his father was "lining up insurance to be covered by L.S.A.T." Even at a later date, Jack Courtney corresponded with Plaintiff on an issue concerning Transwaste because, according to Jeff, "Daddy was handling the insurance matters." The trial court was not manifestly erroneous in finding that Jack Courtney had actual authority to bind Transwaste in the Agreement.
In addition, Defendant Transwaste ratified the Agreement by accepting its benefits. Ratification occurs when "a person gives his consent to an obligation incurred on his behalf by another without authority." La. C.C. art. 1843. The code recognizes a tacit ratification "when a person, with knowledge of an obligation incurred on his behalf by another, accepts the benefit of that obligation." Acceptance of the benefits of a contract implies acceptance of the entire contract, including all punitive terms. Central Surety & Ins. Corp. v. Canulette Shipbuilding Co., 195 So. 114 (La.App. 1st Cir.1940).
It is a well established principle that a party cannot voluntarily accept the benefits flowing from a contract and then when sued by the other party to enforce some provisions of the contract from which the benefits arose, set up the illegality of the contract on account of some informality in its confection.
Id. A party cannot accept the benefits of a contract and then attempt to reject the correlative responsibilities. Id.
Plaintiff provided workers' compensation insurance for Transwaste employees and paid out benefits to its injured workers during the time in question. Defendant Transwaste now argues that, even though it admits it owes Plaintiff for the benefit received, it is not liable for the additional provisions of the Agreement, namely legal fees and interest. We reject this argument. Transwaste accepted coverage under the Agreement. It paid the premium in conjunction with the other Defendants and accepted the benefits Plaintiff paid to several of Transwaste's employees. Transwaste ratified the Agreement, is liable for all premiums due and is subject to all terms of the Agreement.
Defendants further argue against the validity of the Agreement as to all Defendants because the Agreement document was not signed by either an administrator or underwriter for Plaintiff. The behavior of Plaintiff shows that it accepted and ratified the Agreement. It issued Policy number 50,414 in the name of all three Defendants, accepted payment for that policy and paid benefits as required by the Agreement. Plaintiff's chairman signed a certificate of membership in the name of all three Defendants. Such acts are sufficient evidence of acceptance by Plaintiff. The Agreement does not fail because of such an oversight on the Agreement document.
Finally, Defendants argue that the contract is null because the combination of all three Defendants under one policy violates the law. The rules and regulations of the NCCI require common ownership among the companies insured under a single policy. As stated above, Jeff Courtney owns Transwaste and Jack Courtney, Jr. owns the other two Defendant companies. No common ownership exists between all three.
A contract is null if it violates the law, including statutes and, by extension, *498 regulations of those bodies empowered by statute to establish such regulations. La. C.C. art.2030; Lieber v. Caddo Levee Dist. Bd. of Comm'rs, 27,267 (La.App.2d Cir.8/23/95), 660 So.2d 188, writ denied, 95-2355 (La.12/8/95), 664 So.2d 427; Gainer v. Dep't. of Health & Hospitals, 610 So.2d 936 (La.App. 1st Cir.1992). A violation of a non-governmental entity's regulations does not render the contract null. Defendants do not cite, nor do we find, any action by the Louisiana Legislature or Department of Insurance that adopts all NCCI regulations.[3] The combination of the separately owned Defendants does not violate the law or public policy such as to render the contract null.
Holding that the Agreement is valid, we do not have to address whether the attorney fees would have been proper under La. R.S. 9:2781 as a suit on an open account. Further, we only briefly discuss Defendants' assignment of error that their assessment for safety fees lacks consideration. The safety fees are included in the Agreement at five percent of the total standard premium. Defendants agreed to the entire agreement and cannot complain about individual terms they now find unpalatable. In addition, the record shows that the safety fees purchased a conditional service. Plaintiff would provide a safety assessment and program if one was needed by Defendants. This is sufficient consideration for the safety fees.

Validity of the Audits
Defendants submit that Plaintiff failed to carry its burden of proof on the amount of damages, challenging the validity of the audits. They focus on the class codes used to determine the premium and the exclusion of an overtime credit.
In attacking the audits as sufficient evidence of damages, Defendants fault Plaintiff for not allowing them an overtime credit. According to the testimony of the auditors for both parties, the NCCI establishes the rules and regulations for conducting a workers' compensation audit. Under those regulations, an insured receives a credit for payroll that is a result of overtime. To be entitled to the credit, however, the insured must submit payroll with overtime in a recognizable amount and divided among the class codes.
Defendants consistently failed to provide the overtime in such a manner. For the first year of the policy, fund year 1993, Defendants failed to provide the payroll in the correct form and the auditor, Mr. Parker, excluded any overtime credit. Defendants' office manager told Mr. Parker that they would appeal the denial of the overtime credit. The appeal was never taken and now Defendants complain about the failure of the auditor to pursue the issue in Defendants' interest. For fund year 1994, Defendants again failed to properly submit the payroll for the overtime credit. That year was re-audited at the request of Defendants. Again, the payroll was submitted to the second auditor without properly being divided. The second auditor, Ms. O'Neal, had to request that the payroll be corrected. Defendants did correctly submit the payroll and Ms. O'Neal gave them the overtime credit. For the final year, fund year 1995, Defendants appear to have correctly submitted the payroll and the overtime credit was given.
Defendants argue that Mr. Parker, out of fairness, should have worked *499 with them to get them the overtime credit for fund year 1993. As he failed to do so, Defendants submit that the trial court erred in finding that they were not entitled to a credit. We agree with the trial court. Defendants failed to properly submit the payroll in the form required to get an overtime credit. Plaintiff is not responsible for this failure, nor is it required to remedy it by pursuing the credit with Defendant.
Defendants next attack the audits on the basis of the codes used to determine the premium. As described above, based on the description of the work done by a class of employees, the auditor assigned each class a code from the SCOPES manual. Each code has a certain rate that is used to calculate the premium. At issue in this case is the proper code for the drivers on the Transwaste property. These drivers were required to back up to a trailer loaded with solid waste, hook up to it and drive the trailer to a landfill.
The trial court awarded the exact amounts reflected in Plaintiff's "Final Audit Billing" fund years 1994 and 1995. Both billings use code 7219-Trucking: NOC-All Employees & Drivers, at the request of Defendants. Defendants, however, now argue that the proper code is 7380-Drivers, Chauffeurs & Their Helpers NOC-Commercial. The rate for code 7380 is less than that for code 7219 and Defendants argue that, accordingly, they are entitled to a reduction.
The trial court found that the proper code was 9403-Garbage Collection. Code 9403 applies a higher premium than code 7219, which justifies the award. Plaintiff argues that that classification justifies the award and does not seek an increase to the 9403 classification premium. The trial court found that code 9403 applies because Transwaste is properly classified as a garbage works. Under SCOPES, if a employer is considered a 7590-Garbage works, then, under that code, the drivers are assigned code 9403 for Garbage Collection. The parties debate whether the Transwaste facility was a garbage works and whether, therefore, code 9403 applies.
We agree with the trial court that the proper code for the drivers is 9403 because Transwaste is properly considered a garbage works and, as such, its drivers are required to be coded under 9403. Transwaste receives, sorts and loads solid waste, and, therefore, is properly characterized under the SCOPES manual as 7590-Garbage Works. Defendants dispute this classification of Transwaste's facility. They argue that the SCOPES manual requires chemical reduction or incineration at the facility in order for the facility to classified as a "garbage works". We disagree. The SCOPES manual provides that a 7590-Garbage Works may include reduction or incineration, but it does not required that those functions be performed for the facility to be identified as a garbage works.[4] The SCOPES manual, under code 7590, mandates that "Drivers employed by these entities are assigned to Code 9403." Thus, under this requirement, the trial court properly found code 9403 to apply to the drivers.
Defendants also contend that code 9403 does not apply because the drivers were not Transwaste employees, but were Courtney Construction employees. We find this argument unpersuasive. We agree with the trial court that Defendants operated as one entity. Even if they could be distinguished, the record shows that *500 Transwaste controlled the drivers, even if Courtney Construction paid them. For purposes of the SCOPES codes, the drivers were employees of the garbage works and code 9403 applies. The amount of the award for fund years 1994 and 1995 is supported by sufficient evidence.

In Solido Liability
Defendants challenge the trial court's ruling finding them solidarily liable for all damages. A finding of a solidary obligation requires a clear expression of the parties' intent and is not presumed. La. C.C. art. 1796. While the intent to be solidarily bound was not stated in the words of the contract, Defendants' actions were a clear expression of an intent to be jointly responsible for the premiums. A review of the record shows that Defendants entered the Agreement together, paid the premiums jointly and corresponded with Plaintiff as a single entity. The valid Agreement lists Defendants jointly as insureds and a single policy was issued to all three. On these facts, finding that Defendants intended to be solidarily obligated was not manifestly erroneous.
Defendants further argue that Transwaste's sale to Transamerica must be considered on the issue of solidary liability. We disagree. While an obligor may assign an obligation to a third party, the assignment does not release the obligor. La. C.C. art. 1821. Transwaste's agreement with Transamerica does not affect the obligation between Transwaste and Plaintiff. The sale is inconsequential to the issue of solidary liability or damages.

Attorney Fees
The trial court awarded Plaintiff $25,000 in attorney fees. The Agreement provided for recovery by Plaintiff of costs of collection, including reasonable attorney fees. Defendants dispute the amount claiming that it is greater than any amount proven at trial, and any amount that was produced at trial is inflated duplication of work across multiple attorneys, billing for work of non-attorneys and other non-attorney costs, such as telephone charges.
In setting reasonable attorney fees, this court considers: the ultimate result obtained, the responsibility incurred, the importance of the litigation, the amount of money involved, the extent and character of the work performed, legal knowledge, attainment and skill of the attorneys, number of appearances, intricacies of the facts involved, diligence and skill of counsel and the court's own knowledge. Minsky v. Shumate, 40,375 (La. App.2d Cir.3/10/06), 924 So.2d 488. The trial court is vested with considerable discretion in setting attorney fees and will not be disturbed absent an abuse of that discretion. Id.
We find no such abuse of discretion in this case. This case has been pending for ten years. Both parties failed to pursue the claim in the initial years. However, the legal bills submitted into evidence were for work done in the past two years. Non-attorney services and other additional costs, such as travel and court costs, are commonly understood to be part of attorney fees. Further, they constitute a cost of collection for which Defendants are expressly liable under the Agreement. Considering the above factors, particularly the protracted time that this litigation has been pending, we find that the award of attorney fees is reasonable.

Interest
The Agreement provides for Plaintiff to recover ten percent interest on all unpaid amounts. The trial court awarded Plaintiff ten percent interest per annum. Defendants dispute the awarding of interest on a per annum basis. An insurance policy, like any contract, is subject to the rules of interpretation set forth in the Civil *501 Code. Reynolds v. Select Properties, Ltd., 93-1480 (La.4/11/94), 634 So.2d 1180. The Code provides that words of a contract must be given their generally prevailing meaning. La. C.C. art.2047. The term "interest" on a past due amount is generally considered to be on a per annum basis. See, e.g., La. C.C. art.2000 (setting default interest for breach of a conventional interest on a per annum basis), La. R.S. 9:3500 (setting legal interest and maximum conventional interest on a per annum basis). We hold that the trial court did not err in awarding interest at ten percent per annum.

CONCLUSION
For the foregoing reasons, we hold that the parties entered into a valid contract as reflected by the Agreement. Under that agreement, we affirm that Defendants are solidarily liable for unpaid premiums for fund year 1994 of $73,120.10, together with interest in the amount of ten percent per annum from October 27, 1995, until paid, and for unpaid premiums for fund year 1995 of $47,495.02, together with interest in the amount of ten percent per annum from October 8, 1999, until paid. These amounts are supported by sufficient evidence, including the audits submitted by Plaintiff. We affirm the award of $25,000 in attorney fees. Costs are assessed to Defendants.
AFFIRMED.

Per Curiam on Rehearing
SEXTON, J.
We write to briefly address Appellant's rehearing contention that our opinion herein essentially writes out the enforcement of NCCI regulations. We emphasize that our discussion of the applicability of the NCCI regulations is limited to the context of whether a contract is null for violation of public policy under La. C.C. art.2030. We express no opinion as to whether the NCCI regulations are enforceable by the Department of Insurance or Insurance Rating Commission.
Defendants now ask this court to take judicial notice of NCCI Rule 5, which requires common ownership of companies insured under a single policy, as an enforceable regulation within Louisiana, thereby nullifying the contract. They cite several regulations within the Louisiana Administrative Code.[1] The record is devoid of appropriate notice regarding the taking of judicial notice of these suggested departmental regulations.[2] La. C.E. art. 202; La. C.E. art. 202, Author's Notes (4); Wood v. Louisiana Dept. Of Employment Security, 25,545 (La.App.2d Cir.2/23/94), 632 So.2d 899; see also Bower v. Schumpert Medical Center, 618 So.2d 600 (La. App. 2d Cir.1993). We decline, therefore, to take judicial notice of NCCI Rule 5.
The rehearing is denied.
NOTES
[1] During the course of litigation, Plaintiff applied a credit to satisfy the debt from fund years 1992 and 1993. Therefore, at trial, only fund years 1994 and 1995 were at issue.
[2] The term "NOC" stands for "not otherwise covered."
[3] For examples of references to the NCCI, see La. R.S. 23:1196(a)(6)(a) referring to NCCI experience modifiers; La. Admin. Code Tit. 37, § 305, defining "manual rate" as the rate set by the NCCI; and La. Admin. Code. Tit. 37, § 309, requiring certain submissions to the Insurance Department to be in the form proscribed by the NCCI.
[4] By way of contrast, the SCOPES manual references a special state code for Massachusetts for a "9410: Garbage WorksIncineration or Reduction," apparently applying exclusively to incineration or reduction.
[1] Defendants cite in support of their rehearing application La. Admin. Code Title 37, §§ 305 & 309 (2007) and LA Bulletin LIRC 95-96.
[2] The first mention we find of these regulations is an attachment of one page of Rule 5 to the Defendant/Appellant's reply brief (i.e. its second brief) to the trial court of January 4, 2006, 19 days before the filing of the trial court's reasons for judgment.