**HANS COIFFURES INTERNATIONAL, INC., and Hans Coiffures International, Inc., d/b/a Duke and Duchess Wigs and Toupess, Plaintiffs-Respondents,**

v.

**Paul HEJNA, d/b/a Hejna Insurance Agency, Defendant-Appellant.**

No. 33892.

St. Louis Court of Appeals, Missouri.

June 15, 1971.

Husch, Eppenberger, Donohue, Elson & Cornfeld, by Donald W. Bird and Francis M. Oates, St. Louis, for plaintiffs-respondents.

Evans & Dixon by Ralph C. Kleinschmidt and R. J. Slater, St. Louis, for defendant-appellant.

CLEMENS, Commissioner.

The issue here concerns the extent of an insurance agent's liability for his negligent failure to procure a burglary policy ordered by his customer.

Plaintiff, a corporate wigmaker, had a $7,500 verdict and judgment against defendant insurance agent based upon a burglary loss for which defendant-agent had promised but negligently failed to provide insurance. Defendant appeals, his sole contention being that he was entitled to a directed verdict. This, on the ground plaintiff failed to prove it had kept books and records that would have complied with a condition in any burglary policy the defendant would have obtained for plaintiff.

Plaintiff's motion to dismiss defendant's appeal points to violations of Civil Rule 83.05, V.A.M.R., concerning defendant's brief. However, the violations have hampered neither plaintiff nor this court in understanding the issues so we deny the motion to dismiss the appeal and rule on the merits.

Essentially, plaintiff pleaded defendant had previously furnished a $10,000 burglary policy on plaintiff's merchandise;

that plaintiff's president and sole stock-holder, Hans Wiemann, told defendant he was increasing his wig inventory to $50,-000 and moving to a new location; that plaintiff had requested and defendant promised but negligently failed to provide another burglary policy to assure plaintiff full coverage; that plaintiff's new place of business was burglarized but no insurance covered its loss. Defendant pleaded "plaintiff did not sustain a loss within the meaning of any alleged or purported policy of insurance for the reason that recovery could only be made under any policy which plaintiff claims was agreed upon if the insured had records from which the amount of the alleged loss could be accurately determined; defendant states that plaintiff did not maintain or keep records of its insured property in such manner that the amount of the loss, if any, could be accurately determined therefrom."

Since defendant challenges only the sufficiency of plaintiff's evidence we relate the essential facts favorable to plaintiff.

For several years defendant had provided all plaintiff's business insurance—workmen's compensation, public liability, fire, money theft, and burglary of merchandise. Defendant generally kept these policies at his own office. From time to time he billed plaintiff for accrued premiums, which plaintiff promptly paid. The initial burglary policy was for $2,500, later increased to $10,000. Early in 1964 Mr. Wiemann told defendant he was moving the shop to larger quarters, wanted "full coverage," was expanding the stock of wigs to $50,000 and wanted that much burglary insurance. Defendant inspected the new premises and said he would get the burglary insurance. When plaintiff moved to the new location defendant did procure new fire, liability and money theft policies, but defendant neither increased the existing $10,000 burglary policy nor specified coverage for the new location. Defendant neither denied his promise to get the new burglary policy nor explained his failure. Instead, he assured Mr. Wiemann that plaintiff was fully covered on burglary and he would soon deliver the policy. After the burglary at the new location the original insurer promptly denied liability on the stated ground its policy covered burglary only at the original location listed on its policy.

At the new shop plaintiff kept each type of wig in a separate locker. On each locker was a typewritten list of its contents. When an item was sold it was deleted from the list; similarly, when a new item was added an appropriate entry was made on the list. Every month the contents of each locker was compared with the list and a new sheet was posted listing the verified contents. Thus, the lists constituted a "perpetual inventory." After the burglary these lists were assembled and consolidated to show the total number of each type of wig missing. Without objection Mr. Weimann testified as to the value of all missing items, this based on their wholesale cost, his personal expertise and experience and on his knowledge of the nationwide wholesale prices. The total exceeded the $7,500 verdict. Plaintiff had a file of invoices and records showing cost prices of much of the stolen merchandise. Defendant inspected but did not ask plaintiff to produce these records.

■ In sum, plaintiff's evidence showed defendant's promise to obtain burglary insurance coverage, his unexcused failure to do so and a substantial burglary loss by plaintiff. This made a submissible case against the defendant agent. Kap-Pel Fabrics, Inc. v. R. B. Jones & Sons, Inc., Mo. App., 402 S.W.2d 49 [1–3].

Defendant challenges this conclusion on a double-barrelled ground—one factual, one legal. First, the factual assertion, that any burglary policy he could have obtained for plaintiff would have conditioned recovery on plaintiff keeping records that would enable an insurer to accurately determine the amount of loss. At best, *defendant's* evidence was that all burglary policies of which defendant's witness, an insurance broker, was aware did carry a books-and-

**40**

records clause. But even so, there was no evidence the hypothetical insurer with whom defendant might have placed plaintiff's burglary insurance would be unable to accurately determine the amount of plaintiff's loss. Even defendant's evidence did not support this argument.

 The legal barrel of defendant's challenge is that *plaintiff* failed to prove it kept books and records that would enable an insurer to accurately determine the amount of its loss. That puts the shoe on the wrong foot. The defendant-agent incorrectly assumes the hypothetical books-and-records clause was a condition precedent to plaintiff's recovery and that plaintiff had to prove compliance. Not so. It was an affirmative defense, a part of defendant's case, not plaintiff's. If an insurer pleads, as the defendant-agent does here, an exception to the general liability clause of its policy it has thereby set up an affirmative defense and has the burden of proving it. Gennari v. Prudential Insurance Company of America, Mo., 335 S.W.2d 55 [4]. Several cases illustrate the principle.

In Godfrey v. St. Paul Fire & Marine Insurance Company, Mo., 232 S.W. 231 [1, 2], a fire policy prohibited use of the insured dwelling for more hazardous uses. The insurer pleaded and had evidence that the house was used commercially. The trial court directed a verdict for the insurer. We reversed, holding plaintiff had made a prima facie case, that the defense was one on which the insurer, not the insured, had the burden of proof. To the same effect see Drummond v. Hartford Fire Insurance Company, Mo.App., 343 S.W.2d 84 [1–3], holding a vacancy clause in a fire insurance policy raises an affirmative defense. Also see Meyers v. Smith, Mo., 375 S.W.2d 9 [8], holding an insured's alleged violation of the cooperation clause in an automobile liability policy raised an affirmative defense in which the insurer, not the insured, had to persuade the jury.

We hold here that the defendant's charge of plaintiff's failure to keep adequate books and records was an affirmative defense, of no concern in determining the submissibility of plaintiff's case. The trial court properly denied defendant's motion for a directed verdict.

Judgment affirmed.

PER CURIAM:

The foregoing opinion of CLEMENS, C., is adopted as the opinion of this court. Accordingly, the judgment is affirmed.

BRADY, P. J., and WOLFE, J., concur.

DOWD, J., not sitting.