STOULIG, Judge.
This is an appeal from a judgment condemning third party defendant, B.P.B. Contractors, Inc. (B.P.B.), to indemnify third party plaintiff Manser Agency, Inc. (Man-ser), for $7,298.09, representing an unpaid premium for an insurance policy Sayre & Toso, Inc., placed at Manser’s request for B.P.B. This litigation was initiated by Sayre & Toso’s claim against Manser, who in turn third-partied B.P.B. Prior to trial Manser stipulated the debt claimed by plaintiff was due, judgment was rendered on the original demand and only the third party claim was tried.
The facts are not disputed. On March 5, 1975, Pansy Solberg, vice president of Man-ser, wrote a letter to B.P.B.’s president, Phil Landweir, in New York, soliciting its insurance business on real property in Harahan, Louisiana, with a cost-reduction incentive approach. She promised:
“We understand your insurance coverage on the two buildings located at 6040 and 6050 Beven Street, Harahan, Louisiana is coming up for renewal in the near future. We would appreciate the opportunity to submit competitive quotations on these two buildings. We are in a position to offer an All Risk policy which can be tailored to your special insurance needs and affords a sizable premium savings over the standard bureau rates and premiums. We are referring to premium savings in the range of $10,000-$20,000, depending on the insured values used.”
Mrs. Solberg testified that on Friday, March 7, 1975, at approximately 5:30 p. m., Landweir contacted her by telephone and requested she bind coverage on B.P.B.’s uninsured buildings.[1] Mrs. Solberg advised Landweir that she did not have authority to bind coverage and because of the lateness of the hour she could not effect this protection until Monday morning. During the course of their conversation, she discussed with him the surplus line coverage and reiterated the substantial savings which would be realized.
In the letter of transmittal to Landweir dated March 12,1975, Mrs. Solberg enclosed a 30-day binder dated March 10, 1975, affording all risk coverage for $4,000,000 on the assured’s three buildings. She informed him that based on a three-year policy period the annual premium was $39,680 with a $1,000 deductible or $35,160 based on a $25,000 deductible.
Apparently being unsuccessful in reaching Landweir by telephone, Mrs. Solberg on March 31, 1975 wrote him mentioning this fact. She again set forth a sliding schedule of annual premiums for $4,000,000 based on varying amounts of deductibles. Notice was also given that the underwriters were pressing to issue the policy and one would be issued in accordance with the March 10 binder unless B.P.B. advised otherwise by April 9. His attention was also directed to the fact that the premiums on the binder coverage was being earned on a daily basis.
In the meantime, being unaware of the binder Landweir bought through Manser, on March 20, 1975 G. B. Ficken, acting for B.P.B., procured $4,400,000 coverage with a $5,000 deductible at an annual provisional premium of $24,720 with Protection Mutual Insurance Company.
The next letter in Mrs. Solberg’s chain of correspondence is dated April 8 and addressed to Ficken, confirming his telephone notice that insurance had been placed with another agent and requesting cancellation of the March 10 binder. The letter also contained a resume of prior negotiations between her and Landweir leading up to the issuance of the binder and specifically mentioning that on March 14 she had ad *201 vised Landweir by telephone that daily premiums were being earned. Enclosed in the letter was an invoice for $8,109, the premium for the period March 10,1975 to April 8, 1975 for the cancelled binder.
In response to this letter, Ficken on April 15, 1975 wrote Mrs. Solberg expressing the opinion that the 19% short rate factor seemed high and would she send a copy of the table used to develop this rate. Mrs. Solberg on April 23 forwarded to Ficken a Photostatic copy of the “Short Rate Table of Louisiana Rule Book”, which indicates the factor of 19% for a period of 30 days.
The litigants agree Manser is entitled to a premium for the binder effective from March 10, 1975 through April 9, 1975. The issue is how much. Manser demands 19% of the annual premium of the Holland America Insurance Company quoted in the March 12 letter of Mrs. Solberg. Appellant suggests the premium should be computed on a pro rata basis of the annual amount charged by Protection Mutual Insurance Company.
Appellant maintains the trial court erred in applying the short rate formula in computing the sums due upon cancellation of the insurance binder by the insured in that: (1) the third party recovery is based on the short rate calculation as set out in paragraph 26 of the Holland America Insurance Company policy which was not issued until eight days after the cancellation request of B.P.B. and in so doing the court failed to consider the fiduciary obligation owed by Manser to procure the insurance as requested; (2) Manser and Sayre & Toso, Inc., failed to comply with the requirements of R.S. 22:1257 before placing coverage with an insurer not authorized to do business in the State of Louisiana; and (3) R.S. 22:637, which authorizes the short rate premium cancellation, governs the relationship between the insurer and the insured and not between the agent and the insured.
At the outset certain undisputed or unre-futed facts must be noted. The Holland America Insurance Company is a foreign corporation not authorized to do business in the State of Louisiana. Mrs. Solberg did not attempt to place this insurance with any other company nor did she compare various rates at which she could procure the insurance requested by B.P.B. Mrs. Sol-berg had obtained Holland America Insurance Company rates for the contemplated coverage prior to her solicitation letter dated March 5, indicative of her intention to place the insurance with this company. The only evidence that $58,000 was the “Standard Bureau Rates and Premiums”[2] for the desired coverage was the testimony of Mrs. Solberg, which was neither objected to nor refuted. Mrs. Solberg’s request to Sayre & Toso, Inc., to place the insurance coverage for B.P.B. with the unauthorized insurer Holland America Insurance Company, because of her inability to procure such coverage in the State of Louisiana, was dated April 16,1975 and the binder of Holland America Insurance Company was issued on March 10,1975. B.P.B. did have an all risk policy with Allstate Insurance Company from February 10,1974 to February 9, 1975 with an annual premium of $43,825. Phil Landweir did not testify nor was any reason advanced for his failure to do so.
It is beyond dispute that Manser through Mrs. Solberg was acting as the agent of B.P.B. in the procurement of insurance on its buildings. Acting in its capacity as an insurance broker, Manser was obligated to use reasonable diligence in obtaining said insurance at a savings of $10,-000 to $20,000 below the standard rates and in the event of its inability to do so to immediately communicate this fact to her client or suffer the liability imposed by C.C. art. 3003.[3] Implied in the mandate from B.P.B. to Manser is the obligation or duty to procure the desired coverage at the lowest possible premium with the $10,000 to *202 $20,000 limit being the lowest acceptable saving.
From her testimony it is evident that Mrs. Solberg did not attempt to place this insurance with any other company nor did she compare various rates at which the desired coverage could be procured. Apparently she was content to rely upon her belief that the coverage was not obtainable in Louisiana and to place the insurance with the unauthorized surplus carrier, Holland America Insurance Company, at the predetermined rates that would effect a savings of $10,000 to $20,000 below what she testified was the standard bureau rates and premiums. In so doing she may have met the commitment in the letter of solicitation to B.P.B., but she did not fulfill the implied obligation as a mandatary to obtain such insurance at the lowest possible rate. It may also be argued with some degree of merit that not being familiar with the insurance industry, the Allstate premium of $43,825 was the only frame of reference Landweir had when he was quoted the significant reduction.
However, the failure of fulfillment or mistaken belief as to the standard bureau rates and premiums falls by the wayside in the light of subsequent developments. In Mrs. Solberg’s letter of March 12 to Landweir enclosing the 30-day binder effective from March 10, she set forth the annual premiums for the coverage based on a three-year policy with $1,000 or $25,000 deductibles. Upon receipt of this letter, which was never denied, the duty immediately devolved upon Landweir, or more specifically B.P.B., to reject the proposal. Their failure to do so was never explained and their silence continued until two days before the expiration of the 30-day binder period, despite several attempts by Mrs. Solberg, both by mail and telephone, to elicit from them the particular coverage desired. This silence constituted a tacit acceptance of the coverage afforded by the binder for the premium set forth in the letter of transmittal. It produced the legal consequence of a waiver by B.P.B. of the obligations owed to it by Manser under its original instructions to the extent that the binder does not conform with said obligations.
Appellant’s next complaint is that Manser violated the provisions of R.S. 22:1256 in that it obtained a binder from an unauthorized surplus line carrier, Holland America Insurance Company, on March 10, 1975 and did not execute until April 16, 1975 the required written certification that it was unable to procure such insurance coverage from an authorized insurer in the State of Louisiana. It also questions the validity of the certification of unavailability in view of the fact that Allstate had previously issued an all risk policy to B.P.B.
Again because of B.P.B.’s failure to act immediately by rejecting the binder upon its receipt, it accepted the benefits of the coverage against all risks of loss afforded by the binder from the date of its issuance to the date of cancellation. It is well established in the jurisprudence of this State that a party cannot voluntarily accept the benefits flowing from a contract of insurance and when the opposite party attempts to enforce provisions of the contract which was the consideration for such benefits to set up as a defense the illegality of the contract because of some informality in its confection.[4] This contention is without merit.
Appellant’s third assignment of error is that the trial court improperly used the provisions of the Holland America Insurance Company policy issued subsequent to the cancellation date of the binder and further that the provisions of R.S. 22:637 (which authorize a short rate cancellation of premiums) do not apply to a binder and only govern the relationship between an insured-insurer and not that of insured-broker.
A reading of R.S. 22:637 clearly reflects that its provisions are applicable to *203 the cancellation of a binder. Plaintiff’s contention that the trial judge utilized the provisions of the insurance policy rather than the statute is not supported by the record.
In its third party pleadings, Manser sought indemnification from B.P.B. in the event it was cast in judgment in the original action. The trial court rendered judgment in favor of the third party plaintiff against B.P.B. for the identical sum for which the third party plaintiff was cast as the original party defendant in the action brought by Sayre & Toso, Inc., being the premium earned for the period the binder was in effect computed on the short rate basis.
No written reasons for judgment were rendered by the trial judge. Obviously he concluded that Manser, acting as the agent on behalf of B.P.B., was cast in judgment for an indebtedness that was the monetary obligation of its principal. The indebtedness resulting from the failure to immediately reject the binder is the legal obligation of B.P.B., and Manser, acting in a fiduciary capacity pursuant to a mandate, should be made whole and should not suffer the financial loss. The agent is entitled to indemnification from its principal when the latter attempts to evade a just obligation arising out of a mandate.
For the reasons assigned, the judgment of the trial court is affirmed at appellant’s cost.
AFFIRMED.

. Buildings valued at $4,000,000.

. Referred to in Mrs. Solberg’s solicitation letter of March 10.

. Karam v. St. Paul Fire & Marine insurance Company, 281 So.2d 728 (La.1973); Kieran v. Commercial Union Insurance Co. of N. Y., 271 So.2d 889 (La.App. 4th Cir. 1973); C.C. arts. 3003, 3016 and 3017.

. Central Surety & Ins. Corp. v. Canulette Shipbuilding Co., 195 So. 114 (La.App. 1st Cir. 1940). See also Fowler v. Gulf Insurance Company, 306 So.2d 406 (La.App. 3d Cir. 1975).