494 So.2d 1240 (1986)
Richard TATE, M.D., Plaintiff-Appellee,
v.
CHARLES AGUILLARD INSURANCE AND REAL ESTATE, INC., et al, Defendants-Appellants.
No. 85-558.
Court of Appeal of Louisiana, Third Circuit.
September 22, 1986.
Rehearing Denied October 23, 1986.
Writ Granted December 19, 1986.
*1241 Brinkhaus, Dauzat & Falgoust, Jerry J. Falgoust and Cyd Page, Opelousas, for defendant-appellant-appellee.
Guglielmo, Lopez & Tuttle, James Lopez, Opelousas, Voorhies & Labbe Michael W. Adley, Lafayette, for defendant-appellee-appellant.
Morrow & Morrow, Jeffery M. Bassett, Opelousas, for plaintiff-appellee.
Davidson, Meaux, Sonnier & McElligott, Stephen M. Myers, Lafayette for defendants-appellants.
Before STOKER, KING and COX,[*] JJ.
STOKER, Judge.
An insurance underwriter, a broker, and an agent, appeal from a judgment rendered in favor of the plaintiff allowing him recovery under a livestock mortality policy on his horse.
Dr. Richard Tate bought a thoroughbred named British Colonial in 1978 for $50,000. In 1980, he approached his friend Charles Aguillard, an insurance agent, about increasing coverage on the horse to $100,000. Aguillard contacted F. Bolton & Co. Limited, a London broker for Lloyd's of London. F. Bolton secured coverage with Lloyd's Syndicate 657, whose lead underwriter was James Butcher. The coverage ran from October 30, 1980 to October 30, 1981.
Early in October 1981, Dr. Tate had a veterinarian's certificate completed in anticipation of a renewal of his insurance. He paid the premium to Aguillard, who forwarded it to F. Bolton in London. F. Bolton did not approach the London Butcher Syndicate again; instead, coverage was obtained from a group of four London syndicates, the lead underwriter of which was Richard Milligan. The new coverage was to begin on October 30, 1981.
While there was no relationship between the Butcher Syndicate and the Milligan Syndicate, the policy issued the first year, and the policy which was to be issued the second year, were identical. Both contained the following clause referred to as "Condition 1:"
"It is a condition precedent to any liability of the Underwriters hereunder that at the commencement of this Insurance each animal thereby insured is in sound health and free from any illness, disease, lameness, injury or physical disability whatsoever."
On October 26, 1981, a veterinarian was called to examine British Colonial because of neurological problems. The horse was taken to Louisiana State University for treatment. An insurance adjuster was brought in, and Aguillard and F. Bolton were notified that the animal's condition was serious. Communication problems evidently developed, possibly because F. Bolton was attempting to secure some sort of limited coverage through the Milligan Syndicate, which had invoked Condition 1 in denying the existence of a policy. Dr. Tate was aware that the horse's illness on the policy's inception date was causing problems.
During November 1981, the horse's condition appeared to improve, but by the end of the month he had begun to deteriorate. In early December a tracheotomy was performed because of breathing problems. Later in the month, the veterinarians, the insurance adjuster, and Dr. Tate all agreed that nothing more could be done for the horse, and that to allow him to suffer any longer would be inhumane. British Colonial was euthanized on Christmas Day 1981.
Dr. Tate made claims against the Butcher Syndicate and the Milligan Syndicate. *1242 Both were refused. He sued the two groups to claim insurance coverage, and sued Aguillard and F. Bolton for damages due to their misrepresentations, in case neither policy covered the loss. Various cross-claims were filed by the defendants. The jury returned one general verdict and nine special verdicts. It found that the Milligan policy provided coverage, but that Aguillard and Bolton were liable to Tate as well. The Butcher Syndicate was not found liable. In apportioning the percentages of responsibility in the incidental demands, the jury's conclusions were contradictory. The trial judge attempted to "reconcile" the verdicts by holding Milligan primarily liable to Tate for $100,000, subject to contribution of 70% from F. Bolton and 5% from Aguillard. Aguillard, Bolton and Milligan appeal. No objection has been raised against the portion of the judgment dismissing Butcher, so that action is now final.
We find manifest error in the conclusion of the jury that the Milligan policy provided coverage of the death of British Colonial. The terms of Condition 1 are clear. Dr. Tate knew of the condition, and was aware of its implications when the horse first became ill. An insurance policy is a contract between the insured and the insurer and forms the law between them. Hall v. National Life & Acc. Inc., 383 So.2d 74 (La.App.3d Cir.1980). Tate's policy with the Milligan group never came into effect because of the failure of the horse to meet the condition precedent at the point of inception of the policy.
The jury was given instructions concerning equitable estoppel, reformation, and ratification. The defendants argue that these instructions were improper, as the plaintiff did not specifically plead these doctrines. The defendants contend that even if they had been pleaded properly, they were not applicable. The trial judge concluded that the instructions were proper because of an enlargement of the pleadings.
Whether or not the pleadings were sufficient, we do not believe that the doctrines are available. Equitable estoppel cannot be used to enlarge or extend coverage of an insurance policy beyond that set forth in the policy. Smith v. Republic National Life Ins. Co., 335 So.2d 739 (La. App.2d Cir.1976), writ denied, 338 So.2d 706 (La.1976). The policy terms clearly excluded coverage of British Colonial because of his illness on the date of inception. In addition, the party seeking this remedy must show a change in position to his detriment. Wilkinson v. Wilkinson, 323 So.2d 120 (La.1975). As we will discuss below, we do not believe that Dr. Tate suffered any detriment as a result of any conduct by the Milligan Syndicate, Aguillard or F. Bolton.
Reformation can be invoked to conform a written instrument to the original intent of the parties, where there has been fraud or error. Fontenot v. American Fidelity Fire Ins. Co., 386 So.2d 165 (La.App.3d Cir.1980). No disagreement existed as to the terms or the inclusion of Condition 1. Dr. Tate knew the clause existed, and he knew that his horse was ill on the date of inception. There was no fraud or mistake.
Ratification may bind a principal to the unauthorized acts of an agent. Ledoux v. Old Republic Life Insurance Company, 233 So.2d 731 (La.App.2d Cir. 1970), writ denied, 236 So.2d 501 (La.1970); LSA-C.C. art. 843. No one purported to enter into an unauthorized agreement with Dr. Tate. At the first signs of the horse's illness, Condition 1 was brought to Dr. Tate's attention. Aguillard and F. Bolton never offered more coverage than the policy provided, and the Milligan Syndicate denied coverage from the time the facts of the horse's illness reached them.
No contract came into existence, in law or in equity.
In addition, we find no liability on the part of Aguillard or F. Bolton. Regardless of their actions or representations, Dr. Tate suffered no damages because of them. Once British Colonial became ill on *1243 October 26, 1981, no insurer would have covered the animal. Even if Aguillard and/or F. Bolton had informed Dr. Tate that the Milligan Syndicate refused coverage, he could not have secured coverage elsewhere.
Dr. Tate argues that if he had known of the Milligan Syndicate's refusal of coverage, he would have had the horse euthanized earlier, during the terms of the Butcher policy. The uncontradicted evidence shows that neither the veterinarians nor the insurance adjuster would have authorized euthanasia earlier, and their approval was required under the policy.
It is unfortunate that, despite Dr. Tate's best efforts, British Colonial's death was not covered. The circumstances simply created a gap between the two policies, and we cannot hold the defendants liable for the consequences.
The judgment of the trial court is reversed. The plaintiff's claims against Aguillard, F. Bolton and the Milligan Syndicate are dismissed. Costs of the trial and appellate courts are assessed against the plaintiff.
REVERSED.
NOTES
[*] Ronald D. Cox, Fifteenth Judicial District Court, participated in this decision by appointment of the Louisiana Supreme Court as Judge Pro Tempore.