923 F.2d 1100
 Eddie Lee GRAHAM, Plaintiff,
v.
MILKY WAY BARGE, INC., et al., Defendants (Two Cases).
Charles TAYLOR, Plaintiff-Appellee, Cross-Appellant,
v.
CHEVRON U.S.A., INC., Defendant-Appellant, Cross-Appellee.
Charles TAYLOR, Plaintiff-Appellee-Cross Appellant,
v.
CHEVRON, U.S.A., INC., Defendant-Third Party
Plaintiff-Appellant-Cross Appellee.
and
MILKY WAY BARGE LINE CORPORATION, Defendant-Cross
Appellee-Cross-Appellant,
v.
EMPLOYERS REINSURANCE CORPORATION, Defendant-Appellee.
and
LAND & OFFSHORE SERVICES, INC., U.S. Fire Insurance Company,
and North River Insurance Company, Third Party
Defendant-Appellant, Cross-Appellee,
v.
CONTINENTAL UNDERWRITERS, LTD., Third Party Defendant-Third
Party Plaintiff-Appellee-Cross Appellant.
and
Horace HERRIN and Horace Herrin Agency, Third Party Defendant-Appellee,
v.
ST. PAUL FIRE AND MARINE INSURANCE COMPANY, Third Party
Defendant-Appellee-Cross Appellee.
Elizabeth DANIELS, etc., Plaintiff-Appellant,
v.
CHEVRON, U.S.A., INC., Defendant-Third Party
Plaintiff-Appellant-Cross Appellee.
and
MILKY WAY BARGE LINE CORP., Defendant-Cross-Appellee,
v.
EMPLOYERS REINSURANCE CORPORATION and American Fidelity
Insurance Company, Defendants-Appellees.
and
CONTINENTAL UNDERWRITERS, LTD., Defendant-Third Party
Defendant-Third Party Plaintiff-Appellee-Cross-Appellant,
v.
ST. PAUL FIRE AND MARINE INSURANCE COMPANY, Defendant-Third
Party Defendant-Appellee-Cross Appellee,
and
Horace Herrin, Third Party Defendant-Appellee.
BOSSIER BANK & TRUST COMPANY, Plaintiff,
v.
AMERICAN FIDELITY INSURANCE COMPANY, et al., Defendants.
 Nos. 88-3599, 89-3695.
 United States Court of Appeals,
Fifth Circuit.
 Jan. 31, 1991.
 
 Charles E. Lugenbuhl, Lugenbuhl, Burke, Wheaton, Peck & Rankin, New Orleans, La., Gerald C. deLaunay, Nathan P. Horner, Perrin, Landry, deLaunay & Durand, Lafayette, La., for Land & Offshore Services.
 Robert S. Reich, Stephanie C. Hilderbrandt, Terriberry, Carroll & Yancy, New Orleans, La., for Chevron U.S.A., Inc.
 Harvey J. Lewis, Lewis & Kullman, New Orleans, La., for Daniels.
 Davis L. Carrigee, Kimberly Kearney, Burke & Mayer, New Orleans, La., for Continental.
 G. Frederick Kelly, III, Kelly, Davenport & Hogg, New Orleans, La., Ross Scaccia, Metairie, La., for Taylor.
 Stanley L. Perry, Galloano, La., for Herrin.
 Thomas E. Loehn, Thomas W. Lewis, Boggs, Loehn, Rodrigue, New Orleans, La., for St. Paul.
 Jack M. Alltmont, Sessions, Fishman, Boisfontaine, Nathan, Winn, Butler & Barkley, New Orleans, La., for Employers Reinsurance.
 Robert A. Vosbein, Edwin C. Lazier, Adams & Reese, New Orleans, La., for Milky Way Barge Line.
 Randolph J. Waits, Emmett, Cobb, Waits & Kessenich, New Orleans, La., for American Fidelity Ins. Co.
 Appeals from the United States District Court for the Eastern District of Louisiana.
 Before CLARK, Chief Judge, THORNBERRY and HIGGINBOTHAM, Circuit Judges.
 CLARK, Chief Judge:
 
 
 1
 This consolidated appeal comes to us following our decision to remand this case in Graham v. Milky Way Barge, Inc., 824 F.2d 376 (5th Cir.1987) (Graham I ). We now hold: (1) Continental Underwriters, Ltd. (Continental) is not liable to Milky Way Barge, Inc. (Milky Way) or the Federal Deposit Insurance Corporation (FDIC) for failure to use due diligence to procure insurance, and (2) Continental, St. Paul Fire & Marine Insurance Co. (St. Paul), and Employers Reinsurance Company (Employers) are not directly liable to the survivors of Barton Daniel (Daniel).
 
 
 2
 I. Background facts and proceedings below.
 
 
 3
 A. The capsizing.
 
 
 4
 On September 5, 1980, the jack-up vessel M/V STAR II (STAR II) capsized off the Louisiana coast in the Gulf of Mexico. Four men were thrown overboard. Charles Taylor (Taylor), Eddie Lee Graham (Graham), and Captain Rodney Terrebonne (Captain Terrebonne) were rescued but sustained injuries. Daniel was lost at sea.
 
 
 5
 Milky Way owned the STAR II and time chartered it to Chevron, U.S.A., Inc. (Chevron) to service Chevron's equipment in the Gulf. Land and Offshore Services, Inc. (LOS) contracted with Chevron to perform sandblasting and painting services on Chevron's offshore drilling platforms. LOS employed Taylor, Graham, and Daniel.
 
 
 6
 At the time of the accident, the STAR II was jacked up next to a Chevron platform in approximately 54 feet of water. LOS employees serviced the platform from the STAR II. During the day on September 4, seas were about four to six feet and the wind was predicted to increase. During the early morning hours on September 5, the sound of waves striking the hull of the vessel awakened Captain Terrebonne, the STAR II's captain. Captain Terrebonne realized that the lack of an air gap between the top of the waves and the bottom of the STAR II posed a danger to the vessel. He attempted to restore the air gap by raising the vessel further above the water, but one of the hydraulic jacks malfunctioned so that the vessel could not be raised any further. Captain Terrebonne then ordered the crew to abandon ship, but he and the other three men were swept into the Gulf. The STAR II capsized and was a total loss.
 
 
 7
 B. The ensuing litigation.
 
 
 8
 i) Injury and death claims.
 
 
 9
 Graham, Taylor, and Daniel's surviving spouse brought separate actions against Milky Way, Chevron, and LOS for Graham's and Taylor's injuries and Daniel's death. The protection and indemnity (P & I) policies that covered the STAR II named Milky Way as the primary assured and Chevron as an additional assured. Milky Way and Chevron filed third-party demands against their P & I underwriters, American Fidelity Insurance Company (American Fidelity) and Southern American Insurance Company (Southern American). American Fidelity was the primary insurer and Southern American was the excess insurer on the P & I insurance policies.
 
 
 10
 ii) Hull loss claims.
 
 
 11
 Bossier Bank & Trust Company (Bossier Bank) held a preferred ship mortgage on the STAR II and is named as the loss payee in the hull insurance policies. Milky Way and Bossier Bank brought an action against the hull insurance underwriters, American Fidelity, Southern American, and Underwriters at Lloyds (Lloyds), for the loss of the vessel. The FDIC is Bossier Bank's successor in interest. American Fidelity was the primary insurer and Southern American was the excess insurer on the hull insurance policies. Lloyds wrote an increased value policy on the STAR II.
 
 
 12
 iii) Failure to use due diligence to procure insurance claims.
 
 
 13
 In order to cover the possibility that the existing P & I and hull insurance policies on the STAR II did not cover the capsizing, Milky Way brought third-party demands against its insurance agent, Horace Herrin (Herrin), and Continental, an intermediary broker, for failure to use due diligence to procure insurance. Bossier Bank brought a similar action against Herrin and Continental for failure to use due diligence to procure hull insurance, and the FDIC now asserts this claim. Continental responded by bringing an action for indemnity against St. Paul, Continental's primary errors and omissions carrier, and Employers, Continental's excess errors and omissions carrier.
 
 
 14
 iv) Property loss claims.
 
 
 15
 LOS brought an action against Milky Way for the loss of LOS's equipment that was on board the STAR II.
 
 
 16
 C. Proceedings below and appeals before this court.[1]
 
 
 17
 The district court held that Chevron's and Milky Way's negligence caused the capsizing. The district court apportioned fault between Chevron and Milky Way at 30 percent and 70 percent respectively. This court upheld these findings on appeal. See Graham I, 824 F.2d at 388.
 
 
 18
 The parties disputed whether the STAR II was covered by the P & I and hull insurance policies at the time of the capsizing. All of the P & I and hull insurance policies on the STAR II contained, either explicitly or by reference, three navigational and operational limitations: (1) the STAR II was to be operated in "the inland waters of the Gulf states," (2) the STAR II would not elevate in more than 40 feet of water, and (3) the STAR II would not elevate in seas of five feet or more, and would jack down--lower the vessel to the surface of the water--if seas increased to five feet and were predicted to rise. The district court held that these navigational and operational limitations were conditions as opposed to warranties. Thus, the district court found that the existing policies covered the STAR II regardless of compliance with the limitations. After determining that coverage existed, the district court dismissed the failure-to-use-due-diligence-to-procure-insurance claims against Herrin, Continental, and American Fidelity as moot.
 
 
 19
 This court, however, held that the limitations were warranties under Louisiana law. See Graham I, 824 F.2d at 383. We also determined that the STAR II was not covered by the insurance policies because the vessel was in breach of at least two of the navigational and operational warranties at the time of the accident. We stated: "[I]t is clear, from the record, and none of the Appellants have challenged these findings, that the STAR II was operating beyond 40 feet of water 'for elevating purposes' and that it was elevated in seas that were above, and predicted to rise beyond, 5 feet." Id. at 384. We concluded: "The STAR II was operating beyond the navigational and operational limits imposed on it by its insurance policies and was thus not covered by those policies at the time of the accident." Id.
 
 
 20
 On remand, the district court found that Continental failed to use due diligence to procure insurance that Milky Way had requested. The district court therefore held Continental liable to indemnify Chevron and Milky Way for the losses incurred as a result of Chevron's and Milky Way's negligence. The district court also held Continental liable to the FDIC for the loss of the STAR II. Continental and Employers appeal these rulings.
 
 
 21
 The district court held that Milky Way was liable to LOS for the loss of LOS's equipment, but did not grant Milky Way a judgment over against Continental for LOS's damages. LOS appeals and argues that the district court erred by failing to grant Milky Way a judgment over against Continental.
 
 
 22
 On remand, Daniel's surviving spouse brought an action against Continental for failure to warn Chevron, Milky Way, or the STAR II's passengers that the STAR II was unsafe. The district court found that Continental did not breach any duty to Daniel or his surviving spouse. Daniel's surviving spouse also instituted a direct action against Continental, St. Paul, and Employers based on the judgments against Milky Way and Chevron. The district court held that Continental was only obligated to indemnify Milky Way for Daniel's surviving spouse's damages upon Milky Way's actual payment of damages. Daniel's surviving spouse appeals both of these rulings.
 
 
 23
 II. Issues on appeal.
 
 
 24
 A. Failure to use due diligence to procure insurance.
 
 
 25
 Milky Way purchased its insurance policies through the Horace Herrin Insurance Agency. Herrin obtained the policies that covered the STAR II through Continental which served as an intermediary broker. Continental employed Elder Brown (Brown) who served as an insurance broker and underwriter.
 
 
 26
 Milky Way's three owners, Captain Terrebonne, Pershing St. Pierre (St. Pierre), and Sidney Duet (Duet), discussed the possibility of extending the legs on the STAR II in order to allow the vessel to work in deeper water. In the summer of 1980, after the existing policies on the STAR II were bound, Milky Way decided to extend the STAR II's legs from 60 feet to 90 feet. Before the legs were extended, Duet contacted Herrin to discuss the possibility of altering the STAR II and the effects of alterations on the existing insurance coverage. After the legs had been extended, Duet requested additional coverage from Herrin. Herrin contacted Brown at Continental, and Continental dispatched a marine surveyor to examine the vessel and the alterations. The surveyor recommended that a naval architect should examine the STAR II. Brown informed Herrin that Continental wanted a naval architect to assess the vessel's insurability, but neither Herrin nor Continental engaged one. Herrin thereafter made repeated attempts to contact Brown, but Herrin's phone calls were not returned.
 
 
 27
 Continental never procured extended coverage for the STAR II. Duet did not learn that the extended coverage had not been obtained until after the accident. The record shows that neither Duet nor Herrin knew that the STAR II was sent to work in water deeper than forty feet until after the accident. Captains Terrebonne and St. Pierre operated the STAR II. The record shows that neither Captain Terrebonne nor St. Pierre knew about the navigational and operational limitations in the existing insurance policies until after the accident.
 
 
 28
 Initially, we note that Louisiana law governs this claim. Although a marine insurance contract is maritime in nature, it is well settled that an agreement to procure a marine insurance contract is not. See Koch-Ellis Marine Contractors, Inc. v. Phillips Petroleum Co., 219 F.2d 520, 521 n. 2 (5th Cir.1955). Thus, state law governs claims for failure to use due diligence to procure marine insurance.
 
 
 29
 All parties to this litigation agree that under Louisiana law:
 
 
 30
 An insurance agent who undertakes to procure insurance for another owes an obligation to his client to use reasonable diligence in attempting to place the insurance requested and to notify the client promptly if he has failed to obtain the requested insurance. The client may recover from the agent the loss he sustains as a result of the agent's failure to procure the desired coverage if the actions of the agent warranted an assumption by the client that he was properly insured in the amount of the desired coverage.
 
 
 31
 Karam v. St. Paul Fire & Marine Ins. Co., 281 So.2d 728, 730 (La.1973).
 
 
 32
 The district court found that Continental did not use reasonable diligence in attempting to place the insurance requested and did not notify Herrin or Milky Way promptly of the failure to obtain coverage. The district court also found that Continental's failure to notify Herrin or Milky Way that coverage had not been obtained warranted an assumption by Milky Way that the STAR II was properly insured.
 
 
 33
 Continental points out, however, that the STAR II violated one of the warranties in the existing policies by failing to jack down when seas reached five feet and were predicted to rise. See Graham I, 824 F.2d at 383-84. Continental argues that the STAR II would have been in violation of the five foot seas warranty even if Continental had procured the amendments requested by Milky Way to allow the vessel to operate outside inland waters and in more than 40 feet of water. Continental therefore reasons that it should not be liable to Milky Way because the policy extensions requested by Milky Way would not have resulted in coverage. We agree.
 
 
 34
 Louisiana case law consistently holds that an insurance agent may be liable for losses resulting from failure to use due diligence to procure the insurance that the claimant requested. See, e.g., Karam, 281 So.2d at 730. Louisiana courts recognize that a party who claims that an insurance agent failed to use due diligence to procure insurance cannot recover for losses that are not within the scope of the coverage that the party actually requested. See Many v. Hartford Accident & Indem. Co., 505 So.2d 929, 932 (La.App. 2nd Cir.1987); Dietrich v. Travelers Ins. Co., 504 So.2d 970, 973-74 (La.App. 1st Cir.1987); Dooley v. Wright, 501 So.2d 980, 985 (La.App. 2nd Cir.1987), writ denied, 512 So.2d 442 (La.1987). Moreover, under Louisiana law, an insurance agent is not liable for negligent failure to procure insurance when the requesting party would not have been covered even if the agent had used due diligence. See Tate v. Charles Aguillard Ins. & Real Estate, Inc., 494 So.2d 1240, 1242-43 (La.App. 3rd Cir.1986), aff'd, 508 So.2d 1371 (La.1987).
 
 
 35
 In today's case, Milky Way extended the legs on the STAR II so that the vessel could work in deeper water. In Graham I, we noted that Milky Way requested extensions of the navigational and operational warranties in order to provide coverage for work in deeper waters. See Graham I, 824 F.2d at 380. At that stage in the proceedings, the focus was on whether the policy provisions were conditions or warranties. We dealt with Milky Way's request in general terms. There was no need at that time to determine which navigational and operational warranties Milky Way wanted to extend because the district court was requested to make findings on the claims asserted against Continental. On remand, the district court stated: "Milky Way, again acting through Duet, advised Herrin of this modification [of the legs] and requested an amendment to its liability policy to provide additional navigational and operational limits...." The district court held that Continental breached its duties to Milky Way without determining which navigational and operational warranties Milky Way requested to be extended.
 
 
 36
 Under Louisiana law, "[t]he burden of proof is on the plaintiff to show the defendant [who allegedly failed to procure insurance] agreed to provide the coverage." Kieran v. Commercial Union Ins. Co. of New York, 271 So.2d 889, 892 (La.App. 4th Cir.1973).
 
 
 37
 The record reveals that Milky Way extended the legs on the STAR II in order to allow the vessel to service platforms further offshore and in deeper water. There is evidence in the record from which a fact finder could reasonably conclude that Milky Way, through Duet, requested extensions of the 40 foot water depth warranty and the inland waters warranty. Such extensions are consistent with the purpose of the request--to allow Milky Way to take advantage of the STAR II's longer legs.
 
 
 38
 However, the record contains no evidence from which it can be inferred that Duet requested Continental to change the existing coverage by dropping or amending the five foot seas warranty. The record shows that all of the conversations between Duet and Herrin and between Herrin and Brown on the subject of Milky Way's desired coverage were general discussions about the fact that Milky Way wanted to use the STAR II in deeper water. Neither Duet nor Herrin ever mentioned the five foot seas warranty. This warranty is as relevant to safe operation in deeper water as it is to operations in shallow water. It applies equally to jack up vessels with 90 foot legs and with 60-foot legs. Thus, we conclude that if Continental had procured the insurance extension requested by Duet, the STAR II would not have been covered because it was operated in breach of the five foot seas warranty.[2]
 
 
 39
 Milky Way argues that Duet requested whatever coverage was necessary to allow the STAR II to work in deeper waters. From this premise, Milky Way erroneously concludes that Duet implicitly requested Continental to drop the five foot seas warranty. What Milky Way fails to explain is why the five foot seas warranty is inconsistent with the desire to work in deep water. To the contrary, all of the evidence in the record shows that the five foot seas warranty was entirely consistent with operations in deep water. In response to hypotheticals, three expert witnesses testified that Captain Terrebonne should have jacked the vessel down and taken her to safer waters when the seas at the location of the STAR II reached five feet and were predicted to rise. There is nothing in the record which would support an inference that Duet implicitly requested Continental to drop or amend the five foot seas warranty.
 
 
 40
 Milky Way next argues that the STAR II did not breach the five foot seas warranty because a mechanical failure on the STAR II rendered compliance impossible. Milky Way relies on Captain Terrebonne's testimony that, immediately before the capsizing, he repeatedly attempted to jack the vessel above the waves but could not do so because the jacking mechanism on one of the legs failed. This argument is unpersuasive. Under the undisputed evidence as to weather and sea conditions, the five foot seas warranty required the STAR II's captain to jack down long before the early morning hours of September 5. By the afternoon of September 4, the seas were five feet and predicted to rise. By the time of the accident, the seas were significantly higher and the waves were striking the hull of the vessel. Captain Terrebonne testified that he did not attempt to jack the vessel up or down between 8:00 a.m. on September 4 and the time of the capsizing. He also testified that he could have safely jacked the vessel down during the afternoon of September 4. He admitted that he had no knowledge that the existing insurance policies contained the five foot seas warranty.
 
 
 41
 Under Louisiana law, impossibility does not excuse failure to perform when the party seeking to invoke the defense caused performance to be impossible. See Niblett Farms, Inc. v. Markley-Bankhead, Inc., 202 La. 982, 13 So.2d 287, 290 (1943). In today's case, Milky Way offered no proof that its own actions did not cause the mechanical failure. Milky Way cannot claim that its breach of the five foot seas warranty was due to impossibility without proof that the jacking mechanism's malfunction was not caused by Captain Terrebonne's failure to jack down before the waves began striking the hull or by a defect for which Milky Way was responsible.
 
 
 42
 Milky Way argues that the language in the five foot seas warranty is ambiguous and contradictory. We disagree. In Graham I, we held that it was sufficiently clear that the three limitations in the insurance policies were warranties. See Graham I, 824 F.2d at 382-83. We interpreted the five foot seas warranty and found that Milky Way breached it. See id. at 384.
 
 
 43
 Milky Way argues that Continental cannot urge the five foot seas warranty in its capacity as a broker. Milky Way cites Sayre & Toso, Inc. of La. v. Manser Agency, Inc., 351 So.2d 198 (La.App. 4th Cir.1977) and Hamacher v. Tumy, 222 Or. 341, 352 P.2d 493 (Or.1960) for the proposition that a broker has a duty to procure insurance on the best available terms that are consistent with the client's needs. The Sayre & Toso case holds no more than that a broker must obtain the desired coverage at the lowest possible premium. See Sayre & Toso, 351 So.2d at 201-202. The Oregon case concerns whether the amount of proof necessary to demonstrate the existence of a contract to procure insurance is the same as the amount of proof necessary to demonstrate the existence of a contract of insurance. See Hamacher, 222 Or. at 346-47, 352 P.2d at 496. Neither case suggests that a broker who is requested to extend coverage on an existing policy must also alter other policy conditions that are neither mentioned in the request nor inconsistent with the requested changes.
 
 
 44
 Milky Way contends, however, that other jack up barges carry insurance without five foot seas warranties and that Continental cannot rely on hypothetical warranties in a policy that was never procured. Milky Way cites Riley v. Carver Gen. Ins. Agency, Inc., 279 So.2d 698 (La.App. 4th Cir.1973), writ denied, 282 So.2d 523 (La.1973), and Hans Coiffures Intl., Inc. v. Hejna, 469 S.W.2d 38 (Mo.Ct.App.1971). In Riley, the Louisiana Court of Appeals held that an insurance agency could not rely on policy requirements dealing with post accident written notice procedures because the plaintiff gave sufficient notice and could not have known of the conditions until the insurance company forwarded a copy of the policy and because the agency did not prove that it requested notice or was prejudiced. See Riley, 279 So.2d at 700-701. Riley does not apply to today's case. Continental was not requested to secure new coverage with hypothetical provisions. Rather, it was asked to secure amended coverage under an existing policy with a clear warranty provision which could exclude coverage if violated and which was not inconsistent with the request for extended coverage.
 
 
 45
 The Missouri case is also inapposite. In Hans Coiffures, the agent failed to procure a burglary protection policy but attempted to rely on a standard clause in such policies that required the insured to meet certain recordkeeping standards. The Missouri Court of Appeals did not hold that the agent could not rely on such a clause. The appellate court held that the agent had the burden of proof on whether the plaintiff satisfied the recordkeeping standards and that proof of compliance was not part of plaintiff's prima facie case. Thus, the appellate court held that the trial court's failure to direct a verdict for the defendant based on the standard clause was not error. See Hans Coiffures, 469 S.W.2d at 40. In Graham I, we held that Milky Way breached the five foot seas warranty. See Graham I, 824 F.2d at 384. Thus, Milky Way's reliance on Hans Coiffures is misplaced.
 
 
 46
 Continental may rely on the warranty in Milky Way's existing policy because Milky Way requested an extension of that policy without requesting a change in the warranty on which Continental relies. We conclude that Continental is not liable to Milky Way for failure to use due diligence to procure insurance or to the FDIC for the loss of the STAR II.
 
 
 47
 B. Judgment over against Continental.
 
 
 48
 LOS appeals the district court's failure to grant Milky Way a judgment over against Continental for the loss of LOS's equipment. We need not reach this issue because we hold that Continental is not liable to Milky Way.
 
 
 49
 C. Insurance broker's failure to warn.
 
 
 50
 Following our remand in Graham I, Daniel's surviving spouse amended her complaint and claimed that Continental breached a duty to warn Milky Way, Chevron, or the STAR II's passengers that the STAR II was unsafe. She argues that the evidence at trial shows that the marine surveyor informed Continental that the STAR II was dangerous after the legs had been extended.
 
 
 51
 The district court found that Continental did not breach any legal duties owed to Daniel or his survivors. Prior to the Supreme Court's decision in Pullman-Standard v. Swint, 456 U.S. 273, 102 S.Ct. 1781, 72 L.Ed.2d 66 (1982), our circuit's precedent would have classified the district court's ruling as a finding of ultimate fact to which the de novo standard of review applied. See United States v. Wiring, Inc., 646 F.2d 1037, 1041 (5th Cir. Unit B June 1981). Following Pullman-Standard, this circuit has consistently held that the clearly erroneous standard applies to findings of ultimate facts. See, e.g., Chescheir v. Liberty Mutual Ins. Co., 713 F.2d 1142, 1149 (5th Cir.1983) (clearly erroneous applies to findings of ultimate and subsidiary facts). Thus, the clearly erroneous standard governs our review of this finding.
 
 
 52
 Daniel's surviving spouse argues that Continental is liable under the duty enunciated in Restatement (Second) of Torts Sec. 324A (1965). That section provides:
 
 
 53
 One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of a third person or his things, is subject to liability to the third person for physical harm resulting from his failure to exercise reasonable care to protect his undertaking, if
 
 
 54
 (a) his failure to exercise reasonable care increases the risk of such harm, or
 
 
 55
 (b) he has undertaken to perform a duty owed by the other to the third person, or
 
 
 56
 (c) the harm is suffered because of reliance of the other or the third person upon the undertaking.
 
 
 57
 The amended complaint states that jurisdiction over this claim is based on general maritime law and/or diversity of citizenship. It does not indicate, however, whether Daniel's surviving spouse claims that the duty enunciated in section 324A arises under general maritime law, DOHSA, or Louisiana law. We need not decide which law governs this claim because we hold that, under any applicable law, the district court's finding was not clearly erroneous.
 
 
 58
 First, Daniel's survivor has failed to show that Continental should have recognized that its inspection for insurance risk purposes was necessary for the protection of Daniel as required under section 324A. The record shows that Continental dispatched the marine surveyor in order to determine whether to increase the STAR II's coverage. There is no evidence that indicates that Continental intended to use the surveyor's report for anything other than its own insurance purposes. See Young v. Clear Lake Yacht Basin, Inc., 337 F.Supp 1305, 1315 (S.D.Tex.1972), aff'd, 473 F.2d 1389 (5th Cir.1973) (per curiam), cert. denied, 414 U.S. 856, 94 S.Ct. 158, 38 L.Ed.2d 106 (1973); Dowling v. Mutual Life Ins. Co. of New York, 168 So.2d 107, 111 (La.App. 4th Cir.1964), writ ref'd, 247 La. 248, 170 So.2d 508 (1965). The record does not support Daniel's surviving spouse's assertion that the surveyor's inspection recognizably benefitted anyone other than Continental. See Taylor v. Jim Walter Corp., 731 F.2d 266, 267 (5th Cir.1984); Heath v. B.J. Hughes, Inc., 431 So.2d 68, 69 (La.App. 1st Cir.1983). This is not a case in which an insurance company participates in an employer's ongoing safety program. Cf. Tillman v. Travelers Indem. Co., 506 F.2d 917 (5th Cir.1975).
 
 
 59
 Second, Daniel's surviving spouse has failed to demonstrate the existence of any of the three contingencies listed in section 324A. She has not alleged that Continental's actions increased the risk of harm to the STAR II's passengers under subpart (a) or that Continental undertook a duty owed by Milky Way under subpart (b). She has also failed to show reliance by either her husband or Milky Way under subpart (c). She does not allege that her husband relied on Continental's inspection. Moreover, the record supports the conclusion that Milky Way did not rely on Continental's inspection either. Trial testimony established that Milky Way's owners placed the STAR II in navigation shortly after the surveyor inspected the vessel and before the surveyor made his report or communicated his findings to Continental. St. Pierre and Captain Terrebonne sent the STAR II to deep waters without knowing the status of the vessel's insurance coverage. Duet, who requested the extended coverage, did not take part in the decision to send the STAR II to Chevron's platform. Thus, the record shows that Milky Way did not regard the surveyor's examination of the STAR II as a safety investigation.
 
 
 60
 Finally, assuming that the surveyor actually expressed an opinion that the STAR II was dangerous, it is not at all clear that Continental's failure to convey the surveyor's findings was causally related to the accident. The surveyor stated that the STAR II might be unstable with its modified legs fully extended. The undisputed facts are that the modified legs were 90 feet long and that the water depth next to Chevron's platform was approximately 54 feet. At the time of the accident, even assuming a large air gap, the STAR II's legs were not fully extended. Moreover, even if Continental had related the surveyor's statement to Duet, it is unlikely that Duet would have acted upon it because he believed that the STAR II was working in shallow water.
 
 
 61
 We conclude that the district court's finding on Continental's alleged duty to warn was not clearly erroneous.
 
 
 62
 D. Continental's duty to indemnify Milky Way.
 
 
 63
 The district court held that Continental was only obligated to indemnify Milky Way for Daniel's surviving spouse's damages upon Milky Way's actual payment of damages. Daniel's surviving spouse appeals. We need not reach this issue because we hold that Continental is not liable to Milky Way.
 
 
 64
 III. Conclusion.
 
 
 65
 Some portions of the final judgment entered October 3, 1989 were not urged to be error. Other portions were settled during the pendency of the appeal. We deal here only with those portions which are now before us as follows:
 
 
 66
 1. The judgment in favor of Continental Underwriters, Ltd., St. Paul Fire and Marine Insurance Co., and Employers Reinsurance Company and against Elizabeth Daniel, Kelly Lisa Daniel, and Elizabeth Kay Daniel dismissing their complaint against Continental Underwriters, Ltd., St. Paul Fire and Marine Insurance Co., and Employers Reinsurance Company with prejudice is AFFIRMED.
 
 
 67
 2. The judgment in favor of Milky Way Barges, Inc. against Continental Underwriters, Ltd. indemnifying Milky Way Barges, Inc. for any amount which Milky Way Barges, Inc. in fact pays to Chevron USA, Inc., Land and Offshore Services, Inc., Elizabeth Daniels, Kelly Lisa Daniels, and Elizabeth Kay Daniels is REVERSED.
 
 
 68
 3. The judgment in favor of Federal Deposit Insurance Corporation against Continental Underwriters, Ltd. in the amount of $475,000.00 is REVERSED.
 
 
 69
 AFFIRMED, in part, and, in part, REVERSED.
 
 
 
 [1]
 The parties have advised us that the following settlements have been confected during the pendency of this appeal: (1) LOS and Taylor settled all issues arising out of LOS's compensation lien against Taylor's recovery, (2) Continental settled all claims against St. Paul, (3) Taylor settled all of his claims against all parties, and (4) Chevron settled all of its claims against Continental
 
 
 [2]
 Milky Way contends that our statement in Graham I that Milky Way requested a change in the navigational and operational warranties represents a finding by this court that Milky Way requested a change in the five foot seas warranty which Milky Way characterizes as an operational warranty. Milky Way is incorrect. Such a finding would have been unnecessary to the decision in Graham I and clearly erroneous. No evidence in the record supports the contention that Milky Way requested a change in the five foot seas warranty. We refuse to imply that the prior panel made an appellate finding of fact that would have been clearly erroneous